CASE 47—PETITION EQUITY—FEBRUARY 17.

# Thornton, &c., vs. McGrath, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The word *void*, as used in the statutes authorizing the sale of infants' real estate, and in the decisions of this court upon those statutes, should be construed as meaning *voidable* only.

2. Although it may not appear from the record that the commissioners to value the estate of the infants were sworn, it cannot be presumed that they, in fact, were not sworn as the law requires.

3. The recital in the decree of sale that the guardian had given the required bond, authorizes the inference that it was given before, or simultaneously with, the decree, although dated the day after.

4. The failure of infants, who were summoned, to answer, was an error for which they might reverse the judgment, but it would not avoid, or make voidable, the judgment or sale.

5. It is the policy of the law to sustain all judicial sales, regardless of slight and minute defects. (8 *B. M.*, 105.)

6. The acts of 1861 and 1862, authorizing the confirmation of defective sales of infants' real estate, do not operate to impair the obligation of contracts, or to divest vested rights, and are constitutional.

7. Retroactive statutes are not, merely as such, unconstitutional.

BODLEY & SIMRALL, for appellants, cited 16 *B. M.*, 396; 18 *B. M.*, 591, 781; 1 *Met.*, 262; 2 *Met.*, 516, 574; 1 *Met.*, 424; *Smith on Const. and Stat. L.*, secs. 149 *to* 174; 4 *Mon.*, 94; 6 *Mon.*, 594; 5 *Mon.*, 133; 1 *J. J. M.*, 563; 7 *B. M.*, 167; 3 *Dal.*, 386; 2 *Peters*, 414, 627, 661; 7 *Black.*, 474; 16 *Ohio*, 595; 8 *Peters*, 88, 109; 7 *Ind.*, 316; 16 *Mass.*, 326; 9 *Gill*, 299; 1 *Jones*, 489; 2 *Greene (Iowa)*, 94; 10 *Ind.*, 504; 8 *Sm. and M.*, 56; 9 *Ibid*, 312; 12 *Ibid*, 353; 4 *Barb.*, 296; 5 *Ibid*, 480; 9 *Ibid*, 452; 2 *Paine*, 74; 12 *Wheat.*, 378; 11 *Peters*, 280; 17 *Howard*, 456; 16 *O.*, 97; 12 *O.*, 364; 16 *Mass.*, 84, 215; 1 *Yerg.*, 360; 5 *Yerg.*, 320; 2 *Swan*, 35; 7 *Johns.*, 477; *Const. Ky.*, art. 13, secs. 2, 3, 12, 14; 2 *Gall.*, 139; *Story on Const.*, secs. 1393, 1392; 4 *Burrow*, 2462.

SPEED & SMITH, for appellees, cited *Session Acts* 1861–2, *pp.* 7, 64; 2 *Peters*, 380; 8 *Peters*, 110; 17 *B. M.*, 176; 7 *Ind.*, 316; 2 *Paine*, 74; 23 *St. Rep.*, 507; 4 *Texas*, 470; 2 *Swan*, 35; 16 *Geo.*, 102; 2 *O.*, 152; 4 *Foster, N. H.*, 139; 12 *Geo.*, 437; 24 *Miss.*, 35; 7 *Texas*, 348; 9 *Gill*, 299; 2 *Greene (Iowa)*, 94; 1 *Md.*, 66; 9 *Barb. Sup. Ct.*, 482; 10 *Ind.*, 1496; 4 *Barb. Sup. Ct.*, 295; 7 *Howard*, 279; 12 *S. & M.*, 347; 5 *Bars*, 145; 9 *S. & M.*, 310; 16 *Ohio*, 599; 8 *S. & M.*, 9; 8 *Peters*, 88; 17 *Howard*, 450; 3 *Dal.*, 386; 12 *Wheat.*, 378; 9 *Mass.*, 151; 4 *Conn.*, 209; 16 *Mass.*, 260.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

In July, 1854, the appellant, Rosetta J. Thornton, bought at a decretal sale a lot in the city of Louisville, regularly sold in pursuance of a decree rendered by the chancellor of Louisville, on the petition therefor by Mary A. McGrath, as guardian of her infant children, to whom the estate had descended from their deceased father, Thomas A. McGrath; and with her co-appellant, Hawkins, Mrs. Thornton executed, for the price bid, bonds payable in installments as prescribed by the decree.

Having afterwards paid a portion of the consideration, this suit in chancery was brought by the appellants for a restitution of the money so paid, and exoneration from liability for any of the unpaid residue, on the alleged ground that, for some

unspecified non-precise conformity to the statute authorizing such sales, the sale, as made, was *void*. That suit was instituted on the 25th of November, 1862. Before that time—that is, on the 31st of October, 1862—a petition had been filed in the same court seeking a confirmation of the sale, under the authority of the amendatory acts of 1861 and 1862. (*Session Acts, pp.* 7 *and* 64.)

These two antagonistic petitions were .consolidated, and, *pari passu*, progressed to a final hearing, when the chancellor dismissed the petition of the appellants and confirmed the sale.

The appellants, assuming that the sale was void, for want of jurisdiction, urge two grounds for a reversal of the decree appealed from—1st. That the statutes cited as authorizing the confirmation impairs the obligation of the contract; and, 2d. That they divest vested rights; and therefore they are unconstitutional and void.

The statute law of Kentucky authorizing such sales for the benefit of infants has been construed with a peculiar strictness by this court. Whether a more liberal construction would have accorded more with the legislative purpose, and have been more subservient to the interests of infants, it is too late for the court now to consider. The decisions hitherto rendered have been apparently acquiesced in by the legislative department, and, therefore, right or wrong, they must be held by the judiciary as the law of the land. The statute provides that no court shall " *have jurisdiction* " to decree the sale unless commissioners, appointed for that purpose, shall have reported certain facts, and unless, also, the guardian shall have executed a prescribed bond to all the infants; and one of the sections provides, that, unless *bond be given* as required, the decree and sale shall be " *void.*" The statute, failing to declare the decree or sale void for any other cause than the non-execution of the bond, might authorize the presumption that, for any other non-conformity, it intended that they should be erroneous or voidable only; and that, by the words " no jurisdiction to decree a sale," the statute contemplated only a denial of authority *rightfully* to decree a sale by a court, although it had undoubted jurisdiction of the case and over the parties and subject-matter.

But what did the Legislature and this court mean by the term " *void?* " Did they mean that an act for the benefit of infants should make a sale, though beneficial to them, absolutely and unconditionally void as to the purchaser and for *his* benefit? Such would be the suicidal effect of assuming the hypertechnical import of the word void. The common law pronounces a certain class of deeds by infants " void ;" but still, it will be admitted, that no such deed could be treated as void under all circumstances, by the infant, and especially by the other and adult party to it. In that class of cases, as in many others, " void " and " voidable " are used indiscriminately by legislators and jurists, without regard to their true contradistinctive imports; and such is peculiarly the *misuse* of the term " void," when applied to the contracts of infants. Infants may be sufficiently protected by declaring their contracts voidable at their own election. And to make them void in the true sense of the word as to both parties, might frustrate the object of their protection, and pervert an intended blessing into a curse to them, by depriving them of the profit of beneficial contracts. And, consequently, the practical construction of the word void is, as to them, voidability only in all cases of contracts made by themselves. And why should a different effect be given to their contracts made for their benefit, under the guardian care and considerate counsel of their statutory guardian and their political mother, the Commonwealth, which ought to be even more binding?

To illustrate the true and practical construction of the term void, when applied to one class of deeds made by infants, even without any guardian counsel and co-operation, let us suppose that an infant shall have conveyed a tract of land, received the price, and put the adult purchaser in possession, and that the latter should sue in assumpsit or in equity to recover back the consideration he had paid, and the vendor having then reached majority, tender a deed of confirmation, would any just and enlightened court sustain the action and adjudge restitution? Or, after confirming by another deed, could the vendor avoid it on the ground that the first deed was void, and therefore could not be confirmed without some new and bind-

ing consideration? Every jurist will give a negative answer to each of these questions. But no such answer would be true if the first contract had been absolutely void. And, had it been so void as to the infant, it was void as to the purchaser also. This was not, as we feel authorized to presume, the intention of the statute, nor of this court in its adjudications upon its provisions. These decisions embrace only two classes of cases—1st. Those in which the purchaser sought a cancellation of his bonds because a good title could not be assured by infants not concluded by a voidable sale; and, 2d. Those in which the infants sought relief against the sale, claiming rightfully the privilege to avoid it or have it declared void. *To sustain these decisions it was immaterial whether the sale was void or only voidable.* But we are not aware of any case in which it was ever adjudged, or even intimated, by this court, that such a purchaser would be entitled to a judgment of rescission when a good title had been tendered; and we are unwilling to believe that this court will ever so decide.

Then the principle of this opinion will not conflict with any principle recognized hitherto by the same court. The difference is only verbal—the effect is substantially the same.

But, even according to the letter of those former decisions, we have failed to see that the sale in this case was either void or voidable. The able counsel of the appellants assumes that it was void because, as he argues, the commissioners were not sworn; 2d. The required bond was not executed; and, 3d. Infant defendants had not answered the petition. It does not appear that the commissioners were not sworn; and we cannot presume, from that circumstance alone, that they recklessly violated their duty and made an illegnl report; and especially when an evidence of the sale would be the consequence according to some former decisions.

A proper bond was executed by the guardian of all the infant parties—plaintiffs and defendants—and was executed, as we feel authorized to infer, before, or simultaneously with the decree of sale. That decree recites that the bond had been executed, and this judicial recital must be accredited. Although the bond, as copied into the record, purports to be

dated one day after the decree, it is more probable that there was a slight mistake as to date, in either the original or the copy of the bond, than that the court asserted, on its record, a falsehood.· The infant defendants having been all summoned, the failure to answer, by a guardian or otherwise, is only an error, which would entitle them to a reversal. But it did not render the decree or the sale either void or voidable. *This error is not included in the statutory grounds of avoidance.*

To declare such sales void or voidable for various slight and minute defects in preparation, would be inconsistent with public policy and the interests of infants. The vexatious doubts whether the purchaser could hold, and whether, years after his purchase, the sale might not be avoided and he turned out of doors, might deter many persons from bidding, and would be apt to prevent actual bidders from offering the value of the land. And, on this general [ground] (in the case of *Benningfield vs. Reed*, 8 *B. Mon.*, 105) this court said: "It is the policy of the law to sustain judicial sales. The interest of the owner of the property sold requires it. If this rule did not exist, sales of this description would be subjected to many disadvantages, resulting in frequent sacrifices of property."

If, as we are inclined to think, the sale was not void in any of the senses of that word, that would end this controversy. But, not being perfectly satisfied with that as a judicial conclusion, we will now proceed to notice the two objections made here to the chancellor's decree of confirmation.

1. Assuming that the sale was void in the *ultra* sense, and, consequently, as to each party alike, the counsel of appellants, nevertheless, insists that the statutes authorizing that confirmation impâir the obligation of the contract, and are therefore unconstitutional and void. We respectfully suggest that this is a *felo de se*. If the contract of sale was void, it had no legal obligation ; and there being no legal obligation in existence, none could be destroyed or impaired.

2. The position that the statutes are retrospective, and unconstitutionally divest " vested rights," is equally, though not quite so obviously, indefensible.

Retrospective legislation is not, merely as such, unconstitu-

tional; and though it may often be impolitic and unjust, the judiciary is bound by it unless it shall have an effect forbidden by the fundamental law. *Ex post facto* statutes, *applying only to crimes*, and statutes impairing the obligation of contracts, are expressly forbidden by the constitution. The retroaction of the statute may be also unconstitutional constructively, if it divest vested rights. The only provision in the constitution which authorizes this constructive inhibition, is that which secures private property from appropriation to public use without the owner's consent or a just compensation; and the judiciary has construed this guarantee against the public use as an implied guaranty against private use, *subject to the same limitation of the owner's consent or a just equivalent*. And this prevents the taking away of one man's property and giving it to another, which would be divesting a vested right.

But what vested right will be, in the only constitutional sense, divested by the chancellor's decree confirming the sale and conveyance, both made nearly ten years ago, of a lot occupied all that time by the purchaser, and for which the bonds executed are not more than a fair conventional equivalent? She had not, until lately, when this petition was filed for confirmation, made any election or attempt to avoid the sale and restore the lot, and she has long enjoyed, in the value and use of the lot, a full and just compensation for the property in the money she paid and still owes.

The confirmatory statutes were intended for the benefit of such purchasers, as well as for the benefit of such infants, by securing good titles to the purchasers and the fruits of good sales to the infants whose estates may be disposed of by their State as *parens patriæ;* and the State may, if necessary for the effectual exercise of the power, even abolish the legal disability of infancy, as it has virtually done in this class of cases, *pro hac vice.*

The title being now secured to the purchaser, she has no vested right to so much of the money as she has paid, nor any right in equity or law or sound morality to withhold the unpaid residue. No form of judicial remedy would restore the money paid, or exonerate her from full payment. Then the confirm-

ation cannot divest her of a vested right which she neither has nor could make available. She accepted and now enjoys full compensation.

The foregoing views and principles are sustained by many decisions of the supreme court of the nation, and of that of most of the States, a specific citation of which is deemed unnecessary.

Wherefore, the chancellor's decree dismissing the petition of the appellant, Thornton, and confirming the sale under the decree of 1854, is affirmed.