JUDGE GOFER
delivered the opinion op the court.
The appellee, under the name of Mary Albright, was married to Philip Tomppert, sr., April 2, 1872. Tomppert died October 29, 1873, leaving no issue of the marriage, having first made and published his last will and testament, devising all his estate to four children of a former marriage.
This suit was brought by the appellee for the allotment of dower and distribution of the personal estate.
The executor and devisees answered, and alleged that she married the testator under the name of Mary Albright, claiming to be the widow of-Albright, when her name was not Albright, and she was not the widow of Albright, and had never been married to him, and that her marriage with Tomppert was procured by fraud and was void, and on that — and the additional ground that she, without fault on his part, abandoned the bed and board of the testator for several months before his death — resisted her claim to dower and distribution. 'The chancellor adjudged in her favor, and the executor and devisees prosecute this appeal.
We assume, for the purposes of the case, that the facts .alleged have been established by the evidence.
Appellants’ counsel cite several authorities which seem to sustain the broad proposition, that a marriage procured by fraud is void ab initio, and may be so treated whenever called in question. (Schouler’s Domestic Relations, 35; Reeve’s Domestic Relations, p. 206; 2 Kent, 767; 3 Maule & Selwyn, 260 and 537.)
Chancellor Kent says, “A marriage procured by force or fraud is also void ab initio, and may be treated as null by ■every court in which its validity may be incidentally drawn in question.”
Mr. Schouler says, “AH marriages procured by force or fraud, or involving palpable error, are void; for here the element of mutual consent is wanting, so essential to every contract.”
*328 Mr. Reeve says, speaking of marriages procured by fraud, “The true point of light in which this ought to be viewed, I apprehend, is, that the marriage was void ab initio.”
And Mr. Bishop, in his work on Marriage and Divorce (see, 115) recognizes the same doctrine.
This is no mean array of authorities, yet we feel compelled, at whatever risk, to dissent from their views.
Mr. Bishop (section 46), speaking of void and voidable-marriages, says: “ A marriage is said to be void when it is good for no legal purpose, and its invalidity may be relied upon in any proceeding, in any court, between any parties, either in the lifetime or after the death of the supposed husband and wife, whether the question arises directly or collaterally.” And in section 122 the'same author says: “There are various principles applicable alike to fraud, error, and duress, "We may presume that the guilty party would not be permitted so far to take advantage of his own wrong as to maintain a suit for nullity solely on that ground. The party imposed upon may, if he choose, waive the tort, and thereby render the marriage good. Thus a voluntary cohabitation after knowledge of the fraud or error, or after the cause of fear is removed, will cure the defect,” etc. And again, in-section 123, the same author says of marriages procured by fraud, error, or duress, “ They are good at the election of the injured party, who, on being set free from the influence of the fraud, error, or duress, may then give a voluntary consent, and the other party can not interpose the objection of his own-wrong and say that the consent was not mutual.”
Mr. Tyler, in his work on Infancy and Coverture, uses this language on this point:
“ There is a great difference between a void and a voidable marriage, which it is important to notice. A void marriage is at all times a nullity, and binds no one, and is not valid for any legal purpose whatever; it leaves the parties to it in just- *329 the same situation, to all intents and purposes, as though there had been no pretended marriage at all. In such cases, if the parties cohabit, they are adulterers and fornicators, and their offspring, if any, are bastards. But a voidable marriage is valid for all civil purposes, and binding upon the parties so long as it is acted upon and recognized by them, and until its nullity is declared by a competent tribunal; and if the marriage has not been dissolved by sentence or decree during the joint lives of the parties, it will be too late to apply for its avoidance, and consequently the survivor will be entitled to curtesy, dower, and the other rights of a surviving husband or wife.”
The same distinction is stated in much the same language by Mr. Schouler (p. 24) and was recognized by this court in Bassett v. Bassett (9 Bush, 696.)
No other contract recognized by law is held to be void for fraud. It is true that text-writers and judges sometimes use the term void in speaking of such contracts, but it is an inaccurate use of language. (Thornton v. McGrath, 1 Duv. 349.)
Such contracts are voidable only at the election of the party defrauded. The party who commits the fraud is bound and remains bound until the party deceived has made his ’or her election, and will thereafter be bound or not according to the election made.
If Tomppert Avas procured by fraud to marry the appellee, she was bound by the marriage, and remained bound until he elected to avoid it for the fraud.
Whether, if he had so elected on discovering the fraud, she and he would have been alike absolved from the obligations of the marriage without a judgment annulling it, need not be decided. It was not alleged that he did so elect, and for that reason, if for no other, the facts stated in the answer do not shoAV a right in the appellants to treat the marriage as void.
The petition and answer show that the marriage was sol *330 emnized according to the forms of law. This devolved on those wishing to treat the marriage as void the burden of showing, not only that there was fraud, but also that Tomppert had availed himself of his privilege to treat the marriage as void. (Bassett v. Bassett, supra.) For aught that appears in the answer, he may not have elected to treat it as void, but may have waived the wrong and thereby rendered the marriage valid and binding upon both, as if no fraud had been committed.
It may be that he never discovered the fraud. But this can make no difference. The right to take advantage of it was personal, and not having, as far as appears, been exercised by him, can not be exercised after his death by his executors or devisees.
If a marriage procured by fraud is void, the most unjust and absurd consequences would follow. A void marriage is incapable of ratification. It is as if no pretended marriage existed — neither party is bound; the guilty and the innocent are alike at liberty to disregard it. If such a marriage as this is void, the guilty party may set up his or her fraud in order to escape the responsibilities incident to the marriage relation.
Not only so, but although the injured party may elect to waive the wrong, and the guilty party may not desire to insist upon it, third parties may do so.
That which leads to such consequences can not be law. The peace and good order of society, the happiness, the repose and the honor of families, as well as the principles of natural justice, forbid the recognition of such a rule.
There may be adjudged cases which seem to favor it; but if there are, it will no doubt be found upon examination that the marriage was either declared void by statute, or was between parties, one of whom was legally incompetent to contract marriage, or that the case was one not calling for an *331 observance of tbe distinction between a void and a voidable marriage. This court, in the case already cited, quoted with apparent approval from Kent, Schouler, and Bishop, that a marriage procured by duress is void. But that was a direct proceeding by the injured party to annul the marriage, and it was wholly immaterial whether it was void or merely voidable, and the attention of the court not having been directed to the distinction, no notice was taken of it. But the subsequent part of the opinion shows that the court did not regard the marriage as void.
But the court erred in adjudging to the appellee one half the surplus personalty. He left children by a former marriage, and she was only entitled to one third of such surplus. (Sub-section 4, sec. 11, chap. 31, Gen. Stat.)
For this error alone the judgment is reversed, and the cause remanded for a judgment in conformity to this opinion.