## Gellert v. Busman's Administrator et al.

(Decided May 26, 1931.)

HUBBARD & HUBBARD for appellant.

L. G. BRADBURY, S. L. GREENEBAUM and L. D. GREENE for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in part and reversing in part.

Jessie M. Busman, who was married to George Busman on January 5, 1924, died intestate a resident of Louisville on February 22, 1928, survived by her husband and one son, Frank C. Gellert, the issue of a former marriage. At the time of her death, she and her husband had a joint savings account of $4,775. The Louisville Trust Company was appointed administrator of her estate. Thereafter Frank Gellert brought this suit against the administrator for a settlement of his mother's estate. He charged in substance that his mother was a lunatic at the time of her marriage to Busman, and that the marriage was void under section 2097, Kentucky Statutes, which prohibits marriage with an idiot or lunatic. For this reason he alleged that Busman was not entitled to any portion of Mrs. Busman's property, and asserted title in himself to the whole of the joint savings account, to certain furniture of the estimated value of $2,000, and to an Oakland automobile of the value of $1,100. Issue was joined between Gellert and George Busman, and on final hearing the

chancellor upheld the marriage and adjudged that Busman was entitled to one-half of the joint savings account, and that, after the payment of the debts of Mrs. Busman, the remaining one-half should be equally divided between George Busman and Frank C. Gellert. It was further adjudged that George A. Busman was the owner of the household and kitchen furniture and the Oakland automobile referred to in the pleadings, and that neither Frank C. Gellert nor the administrator had any interest therein. Gellert appeals.

The first question to be determined is whether Mrs. Busman was insane at the time of her marriage. The evidence may be summarized as follows: Some time in the year 1920 Mrs. Busman fell in love with a young man by the name of Anderson. In the year 1921 she was accompanied by Anderson to Michigan, and was seriously injured in an automobile accident there. As the result of the accident her limbs were severely burned. After the accident, Anderson appears to have changed his affections to another. Whether due to this fact or the accident, or both combined, Mrs. Busman's mind was seriously affected. She became very nervous, and could not sleep except under the influence of opiates. In the fall of 1922 she became insane. In October of that year she was taken to the Beechhurst Sanatorium, where she became so violent that it was necessary to put her under physical restraint. On December 12, 1922, she was adjudged insane in an inquest proceeding in the Jefferson circuit court, and was then committed to the asylum at Lakeland. For a while after her commitment she did not know any one. She then began to improve, and on February 23, 1923, she was paroled in the care of her son, the appellant, with the understanding that she would be returned if her mental condition made it necessary. Appellant says that he knew at the time that his mother was not well, but that she begged to be taken home, and he secured her parole thinking it would benefit her. Appellant and the mother of Mrs. Busman both say that after the parole she was nervous and easily excited, and would have frequent crying spells. They also say that she required her husband to get up as early as 3 o'clock to take her automobile riding. In addition to this evidence, Dr. L. W. Neblett, who treated Mrs. Busman at the time she was committed to the sanatorium, Dr. Louis W. Eckles, examining surgeon of the United States government and for the criminal court

of Jefferson county, Dr. R. C. Anderson, who was also an examiner for the United States government and for the Jefferson circuit court in sanity cases, Dr. George F. Simpson, a general practitioner of more than 40 years' experience, and Drs. B. A. Moore and W. T. Baker, prominent physicians, all testified that, in their opinion, Mrs. Busman was suffering from dementia præcox or melancholia, a form of insanity for which there was practically no cure, and that she was insane at all times from 1922 until the time of her death.

On the other hand, several physicians, who had specialized in the diagnosis and treatment of mental disorders, gave it as their opinion that the decedent had a functional rather than an organic disturbance, which was not of a permanent nature, but responded to treatment, and expressed the view that she was not insane at the time of her marriage. Sam Bloch, who ran a lunch counter, testified that the decedent worked for him, that she was very capable, and that she had always appeared to be a normal person. Dr. Leon Abraham, who operated a pharmacy at First and Broadway, in Louisville, and who employed decedent for a number of years, testified that she always did her work well, and that he never at any time saw anything wrong with her mind. In addition to this, numerous persons, who were associated with decedent in her work, or who were patrons of the establishment where she worked, all swore to her efficiency, and to the fact that they never saw anything abnormal in her conduct. It further appears that she was a careful, industrious business woman, and though inclined to save her income, made frequent contributions to the support of her mother and occasional presents to her son.

In determining whether one has mental capacity sufficient to contract a valid marriage, the test usually applied is whether there is a capacity to understand the nature of the contract and the duties and responsibilities which it creates. Note to Roether v. Roether, 28 A. L. R. 631, on page 641. If the case turned wholly on the expert testimony, there would be more or less doubt in its solution, but the testimony of the employers of the decedent and of those who associated with her daily is most persuasive of her sanity. A woman who takes in roomers, performs her duties as a wife, engages in outside business, and conducts it to the satisfaction of her employers and their patrons, without exhibiting further

evidence of unsoundness of mind than a few occasional tears, is certainly capable of understanding the nature of the marriage contract and the duties and responsibilities which it creates. Especially is this true where, after contracting the marriage, she shows her appreciation and understanding of the relationship by performing in a satisfactory manner all the duties that the relationship imposes. On the whole we conclude that, whatever be the rule as between the two presumptions, the one arising from the judgment of insanity, and the other in favor of the validity of the marriage, the evidence is such as to leave no doubt that Mrs. Busman was not insane at the time of her marriage.

At the time of her death the savings account belonged to Mrs. Busman, and her husband. There being no contract of survivorship, one-half of it belonged to her estate and one-half of it to Mr. Busman. On her death he was entitled to his half, and the one-half of her one-half after the payment of her debts. Section 2132. Kentucky Statutes. It follows that the judgment with respect to this item was correct.

It remains to determine whether Mrs. Busman had any interest in the Oakland automobile or the furniture in question. The record discloses that at the time of the marriage Mrs. Busman had a savings account of about $3,000. A few days after the marriage the account was changed to a joint account, and thereafter carried in the name of herself and husband. On February 18, 1924, the sum of $1,650 was withdrawn from the joint account and used to buy an automobile which was placed in the name of her husband. Some two or three years later the automobile was exchanged for the Oakland car. The cash payment of $695 was withdrawn from the joint account. During this time and up until the time of Mrs. Busman's death she was earning about $15 a week and he was earning from $35 to $50 a week. Busman claims that he borrowed the money for the purchase of the automobile from the joint account and afterwards paid it back. It is doubtless true that he contributed more to the account than his wife, but we are persauded that he did this, not with the view of paying back an indebtedness, but of carrying out their joint plan of increasing the savings account. While it is doubtless true that the furniture was charged to him, and the greater portion of the purchase price was paid by him, the evidence leaves no doubt that some of the purchase money was paid by Mrs. Busman, and perhaps some of it from their

joint account. One cannot read the record without being convinced that they saved their money together, and bought the machine and furniture together without any thought of individual ownership on the part of either. In the circumstances their plan of saving and acquiring property should be given effect, and to this end we hold that the automobile and furniture stand upon the same plane as the savings account, and that at the time of Mrs. Busman's death she and her husband each owned an undivided one-half thereof. The result is that the property will be distributed in the same manner as the savings account.

Wherefore the judgment is affirmed in part and reversed in part, and cause remanded for proceedings consistent with this opinion.