## Johnson et al. v. Sands.

(Decided October 25, 1932.)

530

A. J. MAY for appellants.

J. B. ADAMSON and EARL R. STEPHENS for appellee.

H. V. McCHESNEY, Jr., warning order attorney.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN
—Reversing.

A demurrer having been sustained to the plaintiffs' petition as amended and they having declined to plead further, their petition was dismissed, and they have appealed.

The plaintiffs, now appellants, are the heirs and distributees at law of A. J. Johnson who, on the 23rd day of April, 1928, married the defendant now appellee. He died on the following day. This suit was brought to set aside that marriage, first, because of alleged fraud and duress practiced by the defendant in its obtention; and, secondly, because of the alleged mental incapacity of A. J. Johnson to enter into a marriage contract. Much is said in briefs of counsel on both sides about this marriage having been consummated in West Virginia, and much is also said in these briefs about the law of West Virginia, both statutory and common, governing valid and void marriages, but we have read the petition and amended petition in vain to discover any reference therein as to where this marriage took place. The petition and amended petition are equally barren of any allegations as to any law of West Virginia, either common or statutory. In such state of case, we must assume that the marriage attacked took place in Kentucky. This being true, the

question whether or not the plaintiffs can set aside this marriage because of alleged fraud and duress practiced by the appellee in its obtention is concluded by the cases of Tomppert's Ex'rs v. Tomppert, 13 Bush, 326, 26 Am. Rep. 197, and Shepherd v. Shepherd, 174 Ky. 615, 192 S. W. 658. The Tomppert Case approved in the Shepherd Case expressly held that the right to set aside a marriage for fraud and duress is personal to the parties to the marriage; that a marriage procured by fraud or duress is not void but voidable, and can only be avoided by the parties themselves while they are yet alive. Cf. section 2117 of the Kentucky Statutes, wherein force, duress, or fraud in obtaining a marriage is set out as a ground for divorce in favor of the party not in fault.

Coming now to the second ground asserted for setting aside this marriage, we find that the allegations in the original petition bearing on this matter are these: That the defendant "procured the said A. J. Johnson at a time when he was mentally and physically unconscious and incapable of knowing or understanding the purport, tenor or effect of his acts, to attempt to enter into a marriage ceremony and to perform the same." In the amended petition the allegations are:

"That at the time she, the defendant, so fraudulently procured said pretended marriage to be solemnized as aforesaid, the said A. J. Johnson was so sick and feeble in body and mind that he was then wholly incapable of knowing or understanding the purport, tenor or effect or his said acts, or the probable or any consequences thereof, and did not in fact know or understand that he was entering into a marriage vow or covenant or agreement of any kind and was not in fact conscious of anything that he was doing; that his faculty or ability to think or power to reason or understand was completely destroyed."

In the eyes of the law, marriage is a civil status arising out of a civil contract, and it is essential to the validity of a marriage that the contract of marriage should, like any other contract, be the result of an agreement of minds. It is well settled in the law of contracts that, if a party is mentally incapable of understanding and appreciating or knowing the effect of what he is doing at the time it is claimed he is contract-

ing, there is no contract, because there is no meeting of minds. Baker v. McDonald, 185 Ky. 470, 215 S. W. 292. In the case of Gellert v. Busman's Adm'r, 239 Ky. 328, 39 S. W. (2d) 511, 512, we said:

"In determining whether one has mental capacity sufficient to contract a valid marriage, the test usually applied is whether there is a capacity to understand the nature of the contract and the duties and responsibilities which it creates."

In an extended note to be found in L. R. A. 1916C, p. 700, it is written:

"Taking up the question as to whether a marriage of a mentally incompetent person is void or voidable, the most universally accepted rule is that, in the absence of a controlling or influencing statute to the contrary, such a marriage is absolutely void in its inception, and continues so, and that no judicial pronouncement to that effect is necessary to restore the parties to their original rights, in consequence of which it may be collaterally attacked by any interested person at any time and in any proceeding where its validity is raised."

To this excerpt is appended a long list of cases, including the case of Jenkins v. Jenkins' Heirs, 2 Dana, 102, 26 Am. Dec. 437. In this case the heirs of Jonathan Jenkins sought to attack a marriage entered into between him and Anne Jenkins because, as they claimed, Jonathan Jenkins at the time of the marriage was of unsound mind. The ultimate purpose of the suit was to deprive Anne Jenkins of dower in Jonathan Jenkins' estate. After defining the term "unsound mind" to mean a total deprivation of reason comprehending idiocy, lunacy, and adventitious madness, either temporary or permanent, remedial or irremedial, the court said:

"Thus understanding, as it is our duty judicially to understand, the phrase 'of unsound mind,' when used in the inquisition, and in the bill, we come to the question—can a person, whilst in such a state of mind, make a contract of marriage that will be effectual for any legal purpose? If we consult reason, analogy, or law, the answer must be no. A contract is the agreement of minds. If there be no reason, or volition, there is no mind

which can make a valid agreement. A person of 'unsound mind,'—an idiot, for example, is, as to all intellectual purposes, dead; and such a being, destitute of intellectual light and life, is as incapable as a dead body of being a husband or a wife, in a legal, rational or moral sense. We know that Lord Coke (1 Thomas' Coke, 662), said—'the wife of an idiot shall be endowed.' But, in a note, the editor says, that such is not now the doctrine of the courts. It is not improbable, that this inconsistent and anomalous doctrine in Coke, was superinduced, chiefly, if not altogether, by the literal and absurd interpretation which had once been given to a statute of 32 H. 8, which declared that, 'no prohibition, God's law except, shall impeach any marriage without the Levitical degrees.' The courts having, at first, construed this statute to mean (what it was never intended to mean), that all marriages, except such as were within the Levitical degrees, were good and valid, necessarily concluded that an idiot might lawfully marry. But this unreasonable doctrine has been supplanted by one that is more just and rational, and which is altogether consistent with the harmony and dignity of the law as a whole and as a science. Marriage is now deemed, in all respects, a civil union, depending on contract, express or implied, and requiring the exercise of reason. Thus it is said of a woman claiming dower, 'she must have been the wife of a person who, at the time of the marriage, was of sound mind, as a man of unsound mind is incapable of contracting, although in the time of Lord Coke the law was held otherwise.' Clancy on Rights, 197. According to the civil law, the marriage of a person of unsound mind was, like other verbal agreements, void; and such, too, is the modern doctrine of the common law. 1 Black. Com. 438. 1 Roll. Abr. 357. Wightman v. Wightman, 4 Johns. Cr. 343. As a necessary deduction curtesy and dower must fail when there had been no marriage. (Prodgers v. Phrazier), 1 Vern. 10. Plowden, 263, b. Law Library, No. 5, 288, and Clancy, supra.

"We do not deem it necessary to the destruction of a claim to dower, asserted in consequence of an alleged marriage with a man destitute of reason, that there should be a decree of nullification in his

life time. For his heirs and distributees may incidentally impeach the marriage, and have its validity and effect judicially settled, in a suit in chancery for dower or for distribution, whenever any claim is asserted to any portion of his estate in virtue of an alleged marriage with him. Unless the woman claiming dower had been the wife of the man in whose estate she claims it, she cannot be entitled to it. She could not have been his wife, unless, during their cohabitation, he had made with her a contract of marriage in presenti. Unless he had reason, or in other words, a sound mind, it was impossible for him to have made such a contract. His incapacity may be asserted by his heirs and distributees, in consequence of their privity; and whenever the fact is satisfactorily established, in an appropriate mode, and in the proper form, all claim to dower must necessarily fail.''

Measured by these principles, it is clear that the allegations in the petition as amended set up such a lack of mental capacity on the part of A. J. Johnson at the time he went through the marriage ceremony with the appellee as to render him incapable of entering into a marriage contract. If these allegations be true, as they must be taken on demurrer, there was no meeting of his mind with that of anybody else, for he had no mental faculties capable of giving assent. Hence there was no valid marriage, and the same was void from its inception. This being true, under the Jenkins and Gellert Cases, supra, the heirs at law of Johnson could maintain this suit to have such marriage declared void. It was expressly so held in the Jenkins Case, and such right was recognized in the Gellert Case, although the evidence there failed to establish the lack of mental capacity on the part of the deceased to enter into the marriage attacked. It results that, in so far as plaintiffs sought to set this marriage aside because of lack of mental capacity on the part of Johnson to contract it, the court erroneously sustained the demurrer to the petition as amended.

The judgment is reversed for proceedings consist-with this opinion.