## COOK v. COOK.

Court of Appeals of Kentucky.

Nov. 16, 1951.

Lawrence S. Grauman, David G. Cates, Louisville, for appellant.

William A. Coffee, Miles R. Thacker, Louisville, for appellee.

MILLIKEN, Judge.

Agnes Waldsmith Cook has appealed from a judgment which annulled her 1930 ceremonial marriage in Indiana to George W. Cook. Her husband had sought the annulment on the ground that he was not mentally competent in 1930 to contract the marriage. Mrs. Cook denied his allegations, counterclaimed for a divorce from bed and board and asked that certain real estate which she and the plaintiff had purchased be restored to her.

In 1926 Mr. Cook had been found incompetent to handle his own affairs and was treated for a short time at the Veterans Hospital, Marion, Indiana, then was released to return to his mother's home. After his marriage to appellant, the couple led a normal life according to the testimony of a neighbor of several years, although the husband had no employment. In fact, in 1934 Cook was restored as a person of sound mind by order of the Jefferson Circuit Court, and drew his own compensation from the Veterans Bureau until he again was declared incompetent in 1936. For the next twelve years he was an inmate of the Veterans Hospital at Lexington, Kentucky, where his wife visited him until advised not to do so by a Veterans Administration official. Mrs. Cook worked steadily throughout the marriage.

■■■ The lex loci contractus governs and determines the validity of the marriage, and if valid where consummated it must be held valid everywhere. Leonard v. Braswell, 1896, 99 Ky. 528, 36 S.W. 684, 36 L.R.A. 707; Johnson v. Sands, 1932, 245 Ky. 529, 53 S.W.2d 929; 35 Am.Jur. 284. Consequently, the Indiana law, Section 44–104 of Burns' Annotated Statutes, governs the question of the validity of the marriage, and reads:

"The following marriages are declared void: * * *

"Third. When either party is insane or idiotic at the time of such marriage."

In construing this statute the Indiana Court has held, in Castor v. Davis, 120 Ind. 231, 22 N.E. 110, 111, that a ceremonial marriage consummated three years after the husband had been adjudged insane and three years before his guardian was discharged, when followed by years of apparently normal married life, clearly overcame the presumption of insanity which originated in the adjudication three years before the marriage and which was never removed by an adjudication of sanity. The Indiana Court commented: "Whatever the presumption arising from the record made in 1840 (the date of the adjudication of insanity) may be when applied to ordinary contracts, we do not think it should be permitted to overcome the presumption in favor of the legality of a marriage where the parties lived together as husband and wife for more than a quarter of a century. Marriage is something more than an ordinary contract affecting the property rights of the parties. It is an institution in which the public have an interest".

■■■ It will thus be seen that the Indiana Court, in Castor v. Davis, based its opinion on the validity of the allegedly void ceremonial marriage and not upon the basis of a common law marriage which is legal in Indiana. In Langdon v. Langdon, 204 Ind. 321, 183 N.E. 400, 85 A.L.R. 1297, it was found that a common law marriage had been created by the parties to supplant a void ceremonial marriage. In the Langdon opinion the Indiana Court inadvertently so described the situation in Castor v. Davis, but a close reading of the opinion in the latter case proves otherwise. We agree, of course, with appellee's reasoning that no common law marriage could arise in Kentucky, where such marriages are not recognized, and thus could not supplant a void ceremonial marriage. The opinion in Castor v. Davis convinces us that the law of Indiana on this subject is in accord with the general rule that the condition of mind at the time of the ceremonial marriage is the one that governs. "Whatever may have been the condition of the party's mind at other times, its condition at the time of the marriage itself must govern the question of capacity." '55 Am.Jur, page 191. In determining whether one has mental capacity sufficient to contract a valid marriage, the test usually applied is whether there is a capacity to understand the nature of the contract and the duties and responsibilities

902

which it creates. Gellert v. Busman's Adm'r, 239 Ky. 328, 39 S.W.2d 511; Dunphy v. Dunphy, 161 Cal. 380, 119 P. 512, 38 L.R.A.,N.S., 818; Payne v. Burdette, 84 Mo.App. 332.

█ The Indiana statute is almost identical to our own statute, KRS 402.020(1), which declares that "Marriage is prohibited and void: (1) With an idiot or lunatic". This court's opinion in Gellert v. Busman's Adm'r, 239 Ky. 328, 39 S.W.2d 511, 512, construed this statute. In that case, Jessie M. Busman married Busman January 5, 1924. On December 12, 1922, she had been adjudged insane and committed to the asylum at Lakeland. On February 23, 1923, she was paroled in the care of her son, leaving him ten months later to marry Busman. She died in 1928. The validity of her marriage to Busman was questioned in a suit over the distribution of her estate and an array of medical experts supported the contention that she was a victim of incurable dementia praecox and, as a consequence, her marriage to Busman was void. On the other hand, one druggist for whom she had worked, another employer, and many friends and associates testified to her efficiency and the lack of anything abnormal in her conduct. This court concluded that "whatever be the rule as between the two presumptions, the one arising from the judgment of insanity, and the other in favor of the validity of the marriage, the evidence is such as to leave no doubt that Mrs. Busman was not insane at the time of her marriage."

We believe it unnecessary for us to determine in the case at bar whether the appellant knew her husband's mental condition at the time of the marriage, although they had kept company with one another for three or four years before the ceremony, for the whole course of his post-marital conduct indicates to us that he considered himself married to the appellant and acted accordingly. His competence may not have extended to the management of his financial affairs throughout the period of their cohabitation nor to his holding employment, but the evidence leaves no doubt but that for several years after the Indiana ceremony he considered himself married to the appellant. So far as the testimony discloses, Cook did not question the marriage until after his release from the Lexington Veterans Hospital in 1948 which culminated with his asking the annulment here sought.

The judgment annulling the marriage is reversed, and the case remanded for appropriate action.