**Adrian M. SAYLOR, Jr., Administrator, etc.,
Appellant,**

**v.**

**Kathleen B. SAYLOR et al., Appellees.**

Court of Appeals of Kentucky.

April 30, 1965.

William A. Watson, Watson & Watson, Middlesboro, for appellant.

A. E. Funk, Jr., E. P. Nicholson, Jr., Middlesboro, for appellees.

PALMORE, Judge.

This is a declaratory judgment action to determine the ownership of a bank savings account. The facts are stipulated. The contest is between the administrator and the widow of Adrian M. Saylor. The trial court found in favor of the widow, and the administrator appeals.

The account was opened by Mr. Saylor on March 19, 1962, with the deposit of $6,540.65 derived from the sale of government bonds owned exclusively by him. The pass book issued by the bank to Mr. Saylor on March 19, 1962, was made out in the names of "Mr. or Mrs. Adrian M. Saylor," and the bank's ledger card for the account was established and thenceforth maintained in the names of "Adrian M. Saylor or Kathleen B. Saylor." Kathleen is the widow.

At the time the account was established Mr. Saylor signed an "authorized signature" card made out in the names of "Mr. & Mrs. Adrian M. Saylor." Two check marks below indicated that two signatures were contemplated, but Mrs. Saylor never signed the card. The form of the card was designed for an individual account.

On June 15, 1963, Mr. Saylor deposited $2,132.60 of his own money in the account, and the deposit was entered in the pass book. There were no other deposits, and for purposes of this opinion it may be assumed that there were no withdrawals whatever, prior to the death of Mr. Saylor on May 15, 1964.

The question is whether the balance of the account at Mr. Saylor's death is payable wholly to the administrator, wholly to the widow, or half to each. The trial court held it was a survivorship account, passing wholly to the widow.

It is recognized in this state that a person may by depositing his own money in the names of himself and another create the equivalent of a tenancy in common or a tenancy by the entirety, depending upon his intent. Gellert v. Busman's Adm'r, 239 Ky. 328, 39 S.W.2d 511 (1931); Armstrong's Ex'r v. Morris Plan Industrial Bank, 282 Ky. 192, 138 S.W.2d 359 (1940); Bishop v. Bishop's Ex'x, 293 Ky. 652, 170 S.W.2d 1 (1943). As in the case of other intangibles such as bonds[1] or stock certificates,[2] the right gratuitously conferred on the other party is recognized and is enforceable on the theory of third party beneficiary contract. It is not necessary that such a contract be supported by a consideration moving from the beneficiary, and it is not necessary that a "gift" be proved. To the extent our opinion in Hays v. Hays' Adm'r, Ky., 290 S.W.2d 795 (1956), held otherwise it is overruled.

"The prevailing modern view is that a donee-beneficiary has a right of action to enforce a promise made for his benefit. In this respect, the courts so holding have rejected any requirement of consideration, privity, or obligation as between the promisee and the third person." 17 Am.Jur.2d 739 (Contracts, § 311).

"In this jurisdiction a party beneficiary of a contract may look to the promisor directly and sue him in his own name to enforce a promise made for plaintiff's benefit, even though he is a stranger, it being sufficient that there is a consideration between the parties who made the agreement for the benefit of the third party." Traylor Brothers, Inc. v. Pound, Ky., 338 S.W.2d 687, 688 (1960). See also Restatement of Contracts, §§ 113, 135.

"It is not essential, in order to enable a third person to recover on a contract made and intended for his benefit, that he knew of the contract at the time it was

---

1. Cf. Marcum v. Marcum, Ky., 377 S.W.2d 62 (1964).

2. Cf. Hensley v. Ball, Ky., 380 S.W.2d 279 (1964).

made." 17 Am.Jur.2d 741 (Contracts, § 314). A fortiori, that Mrs. Saylor did not sign the signature card or otherwise participate in the establishment of the account is immaterial.

■ By his deposit of money a contract was created between Mr. Saylor and the bank. By causing the account to be established and maintained in the names of himself and his wife, in the absence of evidence to the contrary there is a rebuttable presumption that Mr. Saylor intended to and did make his wife a third party beneficiary of the contract. If the account had been opened and maintained simply in the names of "Mr. & Mrs. Adrian M. Saylor," as appeared on the signature card, and there had been nothing else showing an intent that on the death of one the survivor should take the whole, this case would be governed by Gellert v. Busman's Adm'r, 239 Ky. 328, 39 S.W.2d 511 (1931), in which it was held that such an account does not evince a contract of survivorship, but a simple cotenancy, the survivor taking half and the other half passing to the decedent's estate.

■ In most states recognizing tenancies by the entirety in personal property "such a tenancy, absent proof of contrary intent, results where a joint bank account, in the conjunctive form, is opened in the names of husband and wife." 10 Am.Jur.2d 337, 338 (Banks, § 373); Annotation, "Estates by entirety in personal property," 64 A.L.R.2d 8, 83. This is contrary, of course, to Gellert v. Busman's Adm'r, supra, holding that the conjunctive "and" creates the equivalent of a tenancy in common. With respect to accounts in the names of husband *or* wife, disjunctively, the authorities are divided. 10 Am.Jur.2d 338 (Banks, § 373); Annotation, "Estates by entirety in personal property," 64 A.L.R.2d 8, 87 et seq. However, in Hensley v. Ball, Ky., 380 S.W.2d 279 (1964), we held (or intended to hold)

that stocks and bonds issued in the names of one party "or" another pass wholly to the survivor, and the rule should be the same with respect to a bank account.

■ When a person deposits money to the account of himself "or" another he gives to the other person a broader authority, from which it seems to us that he intends a greater right, than would exist if the account were opened in the names of one "and" the other.[3] The inference is that either may take it all, and if one can take it all before the death of the other, how is that right lost thereafter? Such a relationship with respect to a bank account is bound to proceed from a spirit of great trust, confidence, and usually personal love and affection. It is our belief that the average person who has a bank account in the name of himself "or" another expects the balance on hand at the death of one of them to become the absolute property of the other. We hold, therefore, that there is a rebuttable presumption of such intent.

■ In this case the pass book made out in names of "Mr. or Mrs. Adrian M. Saylor" outweighs the signature card bearing the names of "Mr. & Mrs. Adrian M. Saylor" for the simple reason that as between the two the pass book is the one Mr. Saylor is more likely to have noticed, since he kept it in his possession. That he did have it in possession, and used it in making a subsequent deposit, without suggesting a change in the manner in which the names appeared on it is the best evidence of how he intended them to appear. From the evidence stipulated the trial court came to the only reasonable conclusion, which is that Mr. Saylor intended the account to be in the names of "Mr. or Mrs. Adrian M. Saylor."

That Mr. Saylor did not have Mrs. Saylor sign the signature card may indicate that he did not wish her to make any withdraw-

---

**3.** Normally the printed portion of an authorized signature card should spell out the rights of the parties in a joint account, but, as we have pointed out, the card used in this instance was designed for an individual account.

als.[4]  If so, that circumstance is consistent with a purpose to give her the right of survivorship, because otherwise there would have been no reason at all for him to establish a joint account.

The judgment is affirmed.

4.  Whether she could have done so anyway, by virtue of her interest in the account, is a question we are not called on to decide.