AETNA INSURANCE COMPANY,
Appellant,

v.

Virginia SOLOMON et al., Appellees.

No. F–306–72.

Court of Appeals of Kentucky.

June 28, 1974.

John J. O'Hara and Arnold S. Taylor, O'Hara, Ruberg, Cetrulo & Osborne, Covington, for appellant.

Willie Mathis, Jr., and Nick Benson, Walton, for appellees.

JONES, Justice.

This is an appeal from a judgment of the Boone Circuit Court. The original litigation ensued when the appellant (hereinafter referred to as Aetna) refused to pay under a fire and extended coverage insurance policy which had been issued by it. The trial resulted in a jury verdict in favor of the appellees, Virginia Solomon, George Frederick Solomon, Wilbur Spencer and Elmer J. Banker, jointly in the sum of $15,000 on the dwelling and $5,000 on the contents of the dwelling destroyed by fire on October 21, 1970.

Aetna alleges numerous errors on the part of the trial court and each will be discussed as it is presented. In order to adequately consider the questions presented, it is necessary to detail the essential facts. On July 3, 1961, Virginia Solomon (hereinafter referred to as Virginia) and Wilbur Spencer (hereinafter referred to as Wilbur) entered into a land contract with the appellee, Elmer J. Banker (hereinafter referred to as Elmer), for the purchase of approximately seven acres of land located approximately two miles from the city of Walton in Boone County. Geoge Solomon was not a party to the contract.

Located on the property referred to as Kensington Lake was a frame and brick building consisting of nine rooms. Virginia and George, at the time of execution of the land contract with Elmer, were husband and wife. They were divorced in August 1971. While they lived on the premises, one room of the building was

used in their business of selling beer and food to fishermen. The rest of the building was used as a dwelling for Virginia, George, and their two children.

During the ownership and the operation of the business and the occupancy of the dwelling, Virginia and George kept the property insured against loss by fire. In May 1968 George contacted one Cecil Gunter (hereinafter referred to as Gunter), who operated an insurance agency in Cincinnati, Ohio, concerning the issuance of a policy to cover the Kensington Lake property.

Gunter, who operated an Ohio insurance agency, was not authorized to issue policies upon Kentucky property and it was necessary for him to "broker" the policy through a Kentucky agent. On May 9, 1968, Gunter telephoned the Crawford Insurance Agency located in Bellevue, Kentucky, and requested issuance of the policy out of which this litigation arises. Gunter requested the Crawford Insurance Agency to issue a $10,000 policy on a one-family, approved, roof-frame dwelling located at Box 92, Rt. 2, on Kensington Lake, two miles north of Walton, Kentucky. George was the named insured and Elmer's name was listed as mortgagee. On the basis of the information received from Gunter, the Crawford Insurance Agency submitted the information to Aetna and the policy of insurance was issued to George for a three-year term. George testified that he told Gunter there was a fishing lake, a bar, and a short-order restaurant on the premises.

The original policy which was issued by Aetna on May 9, 1968, in the amount of $10,000, was for the period May 9, 1968, through May 9, 1971. The total premium for the three-year period was $315.00. The description of the premises that appears on the face of the policy is as follows: "On the approved roof, one-family, brick and frame (R/frame) dwelling; occupied as a permanent residence and situated at Box 92, Rt. 2 on Kensington Lake, two miles north of Walton, Boone County,

Kentucky." There appears on the face of the policy the following: Gunter Insurance Agency, 4538 West Eighth Street, Cincinnati, Ohio 45238, C. E. Gunter. The policy was signed by Lou Crawford, Aetna's agent, at Bellevue, Kentucky.

George and Virginia remodeled the dwelling and had purchased additional furniture for the dwelling portion of the premises, and in May 1970 George contacted Gunter again about an increase in coverage. Gunter visited the premises and made a list of the contents. An increase in coverage of $5,000 on the dwelling and $5,000 on the household contents was made on May 21, 1970. The increase in the coverage was effected by a change of endorsement and, just as it was in the basic policy, the change of endorsement listed only George as the insured.

The first argument presented by Aetna is that the trial court should have dismissed the complaint of Virginia and Wilbur because they had no contract of insurance with Aetna. Aetna insists that Virginia and Wilbur are strangers to the contract which specifically provides that it insures only George. The record reflects however, that any failure to include the names of Wilbur and Virginia on the policy of insurance resulted from the agent of Aetna's failure to ask anyone, including Gunter, whether any other individuals had an interest in the property. The policy was in the amount of $15,000 as to the dwelling, and $5,000 as to the contents, *"to the extent of the market value of the premises."* Lou Crawford testified that the policy of insurance was on the one-family, brick and frame dwelling. It is apparent from the testimony of both Lou Crawford and his wife Joan that all of the contract concerning a description of the building and the contents was obtained from Gunter. They had no dealings with George, in whose name the policy was issued; nor with Virginia and Wilbur, who had executed the land contract with Elmer. In its brief the appellant cites the case of Triplett v. Helm, 28 Ky. (5 J.J.Marsh) 651

(1831) for the proposition that no one can maintain an action in his own name upon a contract to which he is not a party. Appellant, however, admits that there is *"an exception allowed in the case of the third party for whose benefit a contract is made."* A number of other cases are cited by the appellant in support of its argument that Virginia and Wilbur are strangers to the contract. We think these cases are clearly distinguishable from the facts in the case at bar. Virginia, at the time of the issuance of the policy, was the wife of George. Wilbur is Virginia's brother. The testimony reveals that Wilbur's name on the land contract was to protect the interest of his and Virginia's mother, who had loaned George and Virginia the money to make a down payment on the property.

The prevailing rule enunciated by this court is that one for whose benefit a contract is made may maintain an action thereon in his own name even though the undertaking is not directly to or with him. Commonwealth Life Insurance Company v. Eline, 274 Ky. 539, 119 S.W.2d 637 (1938); Saylor v. Saylor, Ky., 389 S.W.2d 904 (1965); 43 Am.Jur.2d Insurance, p. 313; 44 Am.Jur.2d Insurance, p. 65. Aetna's liability therefore extends to the amount for which it intended to be bound at the time of the execution of the contract and the amount upon which the premiums charged were based. That amount was the sum of $20,000.

Since Aetna issued the policy to insure the full value of the premises, and the issuance of the policy was not based on any person's personal interest in the premises, we conclude that the trial court did not err in refusing to dismiss the action as to Virginia and Wilbur.

Aetna next contends that since only Virginia and Wilbur were parties to the contract with Elmer, George had no insurable interest in the property and as a result, the contract of insurance is not enforceable. The argument presented by the appellant in its brief refutes this contention. It cites KRS 304.14–060, defining "insurable interest" which is " . . . any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance, free from loss, destruction, or pecuniary damage or impairment." George, as Virginia's husband at the time of the issuance of the policy and at the time of the fire, certainly had an insurable interest and an absolute right to enforce the contract of insurance between himself and Aetna. See Annotation, 27 A.L.R.2d 1059.

Aetna next asserts that there was inadequate proof as to Elmer's damage. The answer to this assertion is that Elmer had an insurable interest; he held title to the property and was named in the mortgage clause of the policy as such. There was no need to prove each individual's damages or interests where a specified amount was recovered, because all interested in the land contract and the insurance policy were parties to this action. Aetna Insurance Company v. Snider, Ky., 437 S.W.2d 180 (1969).

Aetna's next contention is that there was a breach of the terms of the contract of insurance in that no proof of loss was filed; hence there could be no recovery. The fire loss occurred on October 21, 1970. The following day George called Lou Crawford's Aetna Agency to advise the company of the loss. The same day Aetna sent its adjuster, Paul Tignor, to investigate the loss. Tignor procured a statement from George, and made a complete investigation. Without detailing all the evidence concerning the investigation, it is clear to us that Aetna, through its agent Tignor, had full knowledge of the loss from the day after it occurred and that the facts and circumstances, as a matter of law, establish a waiver of proof of loss. Western Automobile Casualty Company v. Lee, 246 Ky. 364, 55 S.W.2d 1 (1932).

Finally, Aetna argues that misrepresentations in the procurement of the policy as to the use of the property prevent recovery and the trial court should have directed a verdict in its behalf. We do not agree with Aetna's contention that the policy was issued as a result of any misrepresentations made by any of the appellees. "A misrepresentation in the law of insurance is a statement as a fact of something which is untrue, which the insured states with the knowledge that it is untrue and with intent to deceive, or which he states positively as true without knowing it to be true, and which has a tendency to mislead, where such fact in either case is material to the insurance risk taken by the company." 43 Am.Jur.2d, Insurance, p. 721.

When Gunter called Aetna's insurance agency on May 9, 1968, regarding the issuance of a policy to George, Mrs. Lou Crawford obtained from Gunter the information she deemed necessary to write the policy. She testified that the information provided her by Gunter was correct. However, Mrs. Crawford neglected to ask Gunter if the property had any business use. The undisputed testimony of George is that Gunter was on the premises three times after the policy was written. Virginia testified that she saw Gunter on the premises during the period of insurance. Geneva Spencer testified that she saw a gentleman who was introduced to her as the "insurance man" make a list of the contents of the house in 1970, prior to the fire.

Aetna's insurance agency (Crawford) had complete trust and confidence in Gunter and had "brokered" policies through him and his agency for a period of fifteen years. Although Aetna insists that Gunter was the agent of the insured and refers to him as a broker, we are convinced that the record in its entirety establishes that he was the agent of Aetna in the procurement of the policy. Gunter and Aetna's agency (Crawford) shared in the premium payments. The Crawford Insurance Agency was bound by his acts. Aet-

na's agency (Crawford) wrote a policy of insurance on premises they had never seen, for a man they had never heard of, received anything in writing from, talked to, or communicated with in any way; and then proceeded to maintain insurance three and one-half years until the fire loss. The Crawford agency and Gunter accepted and profited from insurance premiums paid during this period. Aetna cannot now complain that it was misled.

We have reviewed the entire record and are convinced that the allegations of error by Aetna are totally without merit. Accordingly, the judgment is affirmed.

All concur.