## O'Brien's Administratrix v. Murray.

(Decided Feb. 22, 1935.)

ROGERS & ROGERS for appellant.

WARE & WARE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee, Mary C. Murray, as plaintiff below, filed this action in the Kenton circuit court against appellant, administratrix of the estate of Thomas J. O'Brien, as defendant below, seeking recovery against defendant in her representative capacity of the sum of $4,000, the alleged value of designated city of Cincinnati bonds which plaintiff averred belonged to her and had been converted either by decedent, Thomas J. O'Brien, before his death, or by defendant as his personal representative, since his death, and that defendant on demand made upon her by plaintiff refused to deliver

the bonds to plaintiff, or to account for their value, and for the wrongful conversion of them recovery was sought. The petition alleged that plaintiff in July, 1927, was the owner of the bonds, and that she at that time entered into a bailment transaction with decedent whereby she delivered them temporarily to him for safekeeping while she was away on a pleasure trip, and that they were to be delivered to her after her return upon demand. She neither alleged nor proved any such demand thereafter, but sought to excuse it by alleging that shortly after she returned from her pleasure trip decedent was stricken with paralysis from which he never recovered and from the effects of which he died on December 6, 1931, during the larger portion of which time his estate was managed by a committee duly appointed by the court for that purpose.

The answer of defendant expressly denied plaintiff's ownership of the bonds at any time, and it also contained this averment: "Defendant further denies that the bonds herein mentioned were never re-delivered to plaintiff by the said Thomas J. O'Brien for the reasons set forth in the petition, but says that if any bonds were delivered by plaintiff to said Thomas J. O'Brien they were not re-delivered (to plaintiff) for the reason that said Thomas J. O'Brien was the owner thereof." The entire reply, excluding caption, prayer and signature of attorneys, was and is: "Now comes plaintiff and for reply herein denies that the bonds mentioned in the petition were the property of the said Thomas J. O'Brien, or that he was the owner thereof." The only issue submitted to the jury by the court's instruction was whether or not the transaction in July, 1927, whereby plaintiff delivered the bonds to Thomas J. O'Brien, was a bailment of them to him, with the further direction that if the jury found that it was a bailment to then return a verdict for plaintiff; otherwise to find for defendant. Eleven members of the jury found for plaintiff under that instruction, upon which the court rendered judgment in her favor, and, defendant's motion for a new trial having been overruled, she prosecutes this appeal.

Plaintiff sought to establish her title to the bonds, which she claimed had been wrongfully converted in the manner indicated, through an inter vivos gift of them to her by the decedent, Thomas J. O'Brien, made in

February, 1923, at which time they were delivered to her by him (as she contends) in a manner to constitute a valid inter vivos gift, and that she kept them in her private safety deposit box in a bank in Cincinnati, Ohio, from that time until she redelivered them to O'Brien in July, 1927, for the purposes above stated. Her only witness to such transactions was her sister, Elizabeth Murray, who testified that she was present with her sister (plaintiff) and O'Brien on both occasions, the one in February, 1923, and the other in July, 1927; plaintiff, of course, being incompetent as a witness under the provisions of section 606 of our Civil Code of Practice. See Combs v. Roark's Adm'r, 221 Ky. 679, 299 S. W. 576. If there was no contradiction of that testimony appearing in the record or offered by defendant and wrongfully rejected by the court, then possibly the verdict could be considered as sustained by the testimony, and there might be no other course open to us but to affirm the judgment, since in that event there could be no question but that the transaction in July, 1927, would create the relation of bailment between plaintiff and O'Brien, whereby she as bailor delivered the bonds to him as bailee, and neither he nor the representative of his estate after his death could defend an action for their recovery or for their conversion by denying the bailor's title thereto. But the pleadings in this case, as we have seen, although somewhat vaguely expressed, are sufficient, as we conclude, to present the issue as to whether the transaction in July, 1927, was in fact a bailment of the bonds by plaintiff to O'Brien; or whether it was a termination of a bailment of them to plaintiff by him in February, 1923, which she insists was a gift of them to her, but which defendant sought to establish by offered testimony was at most an abortive effort on the part of O'Brien to give them to her, but which in law had the effect of only delivering them to her for safe-keeping.

It was admitted by plaintiff, as well as proven in the case, that continuously following the transaction in February, 1923, O'Brien collected the coupons from the bonds semiannually, and that plaintiff had never collected or appropriated any of the income therefrom. On most of the occasions O'Brien would obtain the bonds from plaintiff's safety deposit box and sever the coupons therefrom and collect them, thus indicat-

ing that he had access to the box. But on others plaintiff would go along with him and obtain the bonds herself when O'Brien would obtain the coupons and appropriate them in the same way. It thereby appears from such course of conduct, following the 1923 transaction, that there was an understanding at the time O'Brien delivered the bonds to plaintiff in 1923 whereby no present beneficial interest therein passed to her, but at most only some future beneficial interest was attempted to be transferred. But, passing that circumstance, defendant offered to prove by her attorney a conversation he had with plaintiff in his office after O'Brien's death concerning the claim she was asserting against his estate. A question propounded to that witness was: "I will ask you to tell the jury, Mr. Cushing, what statement, if any, the plaintiff in this action made to you at that time about how she acquired the bonds referred to in this suit— tell the court and jury all about it and what she said to you?" The court sustained plaintiff's objection thereto and said: "Not how she got them, but what interest she had in them." Counsel for defendant then stated, "I am asking him to tell the jury just what she said about those bonds," which was followed by this remark of the court, "About what she said about giving them back to him, I will allow him to ask." Defendant's attorney then responded: "No, I am asking him what she said about these bonds—her claim on them and on what she based her claim." The court then said: "She said she had possession and that is all I am going to require her to prove and to show to the jury. You may make your avowal." The avowal so made says that if the witness was permitted to answer he would truthfully say: "That on the occasion referred to the plaintiff called at his office and in the course of the conversation she stated that in 1924 (correct date 1923) in July of that year, the decedent, Thomas J. O'Brien, gave to her the four one-thousand dollar City of Cincinnati municipal bonds referred to in the pleading, with the understanding that in the event she outlived him the bonds were to be hers, but in the event he outlived her, they were to remain his property; that during the time from February, 1924, (instead of July 1923) up until the latter part of July, 1927, he clipped from the bonds all of the coupons and collected all of the income on them, and

that in July, 1927, she was preparing to take a trip to New York and Canada and that she went to the safety deposit box and procured these bonds and delivered them to Mr. O'Brien, with the statement that she wanted him to have them while she was away on this trip, so that if anything should happen to her that these bonds would not be found among her possessions, that she wanted to carry out her agreement with him when they were left with her in the first instance.''

If that answer was true, it was an admission by plaintiff as to the terms and conditions upon which the bonds were originally delivered to her, and which is the only transaction through which she claims to have become the owner of them through the inter vivos gift which she avers that transaction completed. But if the transaction took the form as set forth in the avowal, it was no more than an incomplete or abortive gift, and resulted in only a bailment of the bonds by O'Brien to plaintiff and which never invested the title to them in her. So that, when she returned them to him in July, 1927, it was only a termination of that ineffective gift creating only a bailment of the bonds to her by decedent.

The law with reference to the making and completing of inter vivos gifts, and the passing of title thereby, is well settled, both by text-writers and our opinions, a detailed recitation of which is not called for in this opinion, further than to state that the proof by the donee, especially where the relationship between the parties is that of a confidential nature, should be clear, convincing, and explicit. Foxworth v. Adams, 136 Ky. 403, 124 S. W. 381, 383, 27 L. R. A. (N. S.) 308, Ann. Cas. 1912A, 327; Goodan v. Goodan, 184 Ky. 79, 211 S. W. 423; Hale v. Hale, 189 Ky. 171, 224 S. W. 1078; Anderson's Adm'r v. Darland, 192 Ky. 624, 234 S. W. 205; the Combs Case, supra, and others cited in those opinions. See, also, the text in 28 C. J. 676, sec. 82, in which it is said, inter alia: ''It is held that gifts inter vivos are watched with caution by the courts, and that to sustain them the evidence must be clear and convincing,'' etc. The solidly cited cases to note 33 of that excerpt cover the larger part of two pages, and in which is the Hale Case, supra, and the domestic one of Buckel v. Smith, 82 S. W. 235, 26 Ky. Law Rep. 494. The above-cited domestic cases also announce and ap-

prove the same principle, while the Foxworthy, Goodan, and others of them, following the general rule on the subject, expressly state that: "Where future control over the property remains in the donor until his death, there is no valid gift inter vivos." In support of that excerpt, the Foxworthy Case and the one of Reynolds v. Thompson, 161 Ky. 772, 171 S. W. 379, are cited.

The opinion in the Foxworthy Case, in expressing the same principle, says: "Gifts inter vivos have no reference to the future, but go into immediate and absolute effect. Thus a gift of property to take effect after the donor's death, the donor in the meantime retaining the control and dominion of the property, cannot be sustained. The delivery must be absolute. All gifts that are not to take effect at once are void." The prior domestic case of Stark v. Kelley et al., 132 Ky. 376, 113 S. W. 498, is cited in support of that excerpt, and later on in the opinion the case of Walden's Adm'r v. Dixon, 5 T. B. Mon. 170, is referred to as approving the same principle. We thus see that if the delivery of the bonds to plaintiff in February, 1923, was conditioned as stated in the avowal referred to it took away from that transaction one essential element to constitute a valid gift inter vivos and rendered the delivery of the bonds to plaintiff as a result of it effectual only as a bailment of them to her, with the title in O'Brien as the alleged donor. If the testimony embodied in the avowal was believed by the jury to be true, then it had the right to find that the transaction in July, 1927, was not a bailment of the bonds by plaintiff to O'Brien, but was only a termination of the bailment of them to her made by him in 1923, and for which reason we conclude the court erred in rejecting the offered testimony of the attorney of defendant. With that testimony in the case, the substance of defendant's offered instruction A, which the court refused to submit to the jury, should have been given.

The only testimony of the alleged gift in this case was, as we have seen, furnished by plaintiff's sister, and it is not altogether explicit, nor does it convincingly establish all of the elements necessary to constitute such a gift. In other words, we mean to say that her testimony leaves some of the essentials to be inferred. Her testimony on the vital point was that

on the occasion of the alleged gift O'Brien ''came to the store early one morning and said 'I want to see Mayme,' (plaintiff), then she came in and he handed the bonds to my sister right before me and I looked at them and, saw them and he said 'Here are your bonds.' '' She also stated that a similar transaction had occurred with reference to other bonds in 1915 between the same parties, but that they were afterwards redelivered by plaintiff to O'Brien, and no claim is made that any title passed to plaintiff by any such prior transaction. That witness also testified that O'Brien and plaintiff had been sweethearts since about 1897 and became engaged to be married in 1904, but for some reason or other the ceremony was never pronounced. It is, therefore, shown that the relationship between the parties in this case was a confidential one, as well as that he had theretofore delivered some of his bonds to her in the same manner and presumptively for safe-keeping and which she had returned to him. It is therefore doubtful if the only testimony in the case establishing the gift (that of plaintiff's sister) measured up to the requirements of the law, as we have found it, necessary to establish such a gift; but in view of the fact that the judgment will have to be reversed for the indicated error, supra, it will not be necessary to determine that question at this time.

For the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial, and for proceedings consistent with this opinion.