## Armstrong's Ex'r v. Morris Plan Industrial Bank et al.

## Same v. Liberty Nat. Bank & Trust Co. et al.

March 5, 1940.

Thomas A. Ballantine, Special Judge.

Tilford & Wetherby for appellant.

Crawford, Middleton, Milner & Seelbach and J. Donald Dinning for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

These two consolidated actions, as above captioned, call for our determination of the question as to who, the trustee of testator's estate or the appellee, his. daughter, Lydia Barbee Armstrong, is entitled to the remainder of the two joint bank accounts carried by testator in the names of himself and daughter, with survivorship clause.

The facts as shown by the record, out of which these suits arise, are that the testator, Julian Tevis Armstrong, died on December 20, 1938, when 77 years of age.

He was survived by an only daughter, the appellee, Lydia Barbee Armstrong, an adult son, Thomas Brent Armstrong, who is employed and living in Cincinnati, O., and an infant grandson (some five years of age), Julian Tevis Armstrong, II, the only son of testator's deceased son, John Tevis Armstrong.

Testator's wife, it is shown, died in 1912, since which time his daughter, the appellee, has lived with him in their family home, his constant companion and faithfully looking after his needs and the affairs of the house.

It appears that testator had been a man of frugal habits and continuous industry and had accumulated an estate amounting to some $19,000, which he carried on deposit with the two appellee banks as a checking and savings account, and, exclusive of this, he owned at the time of his death an estate of some $20,000, consisting of stocks and securities, which he disposed of under his will, drawn some ten years prior to his death. By his will he left to each son a fourth interest in his estate and to his daughter the income from a half interest therein, her remainder interest to go at her death to her brothers or their descendants.

These collateral matters, however, possess no relevancy to the question here before us, other than as serving to throw some light on testator's intention and purpose in changing his deposit accounts carried in his own name with the two appellee banks into joint accounts, carried in the names of himself and daughter.

As to this, it appears that some seven or eight months prior to his death, he, in the company of his daughter, Lydia, called at these banks in which he was carrying the two deposit accounts here involved and told the officers of the banks that he wished to change them into joint accounts. Testator's wish and manifested intention was thereupon carried into effect by the signing of appropriate writings, changing the checking and savings accounts carried in the banks into joint accounts carried in the names of himself and daughter, with survivorship clause.

The wording and language of the writing employed in the savings account transaction are as follows:

"This indenture, made and entered into at Louisville, Kentucky, this 6 day of June, 1938, by and between ——————— ———————— and L. Barbee Armstrong, of the first part (hereinafter called depositors), and the Morris Plan Industrial Bank, of the second part (hereinafter called the bank),

"Witnesseth:

"It is agreed between the parties hereto, and each and all of them, as follows:

"The depositors are opening a joint account with the bank, in the names of both of the depositors, to whose joint account all moneys shall be deposited. Each of the said depositors shall have the right to check or draw upon said account without the signature of the other, as fully and to the same extent as if the account stood in his name alone. Upon the death of either of the depositors all of his interest in and claim upon the said joint account, or any part thereof, shall cease, and his estate shall have no interest in or claim upon the said joint account or any part thereof, and the funds standing to the joint credit of the depositors, as aforesaid, shall belong absolutely to the survivor.

"In testimony whereof, witness the hands of the parties hereto.

"J. T. Armstrong,
"Miss L. Barbee Armstrong

"Morris Plan Industrial Bank,
"By ——————."

A like writing, changing his checking account carried in the Liberty Bank into a joint account, was also signed by testator, his daughter and the bank, which we will not quote herein.

This change having been thus effected, both the father and daughter, as by the terms of the contract they were authorized, proceeded to check upon the joint accounts as desired up until the time of Mr. Armstrong's death in December, 1938.

Thereupon, the appellant, United States Trust Co., the named executor of Mr. Armstrong's will, demanded of the two banks in which these joint accounts were carried payment of the balance then remaining in the accounts, contending that testator's estate was entitled thereto.

The daughter and appellee, Lydia Barbee Armstrong, contested this claim, contending that under the terms of the joint account contracts had with the banks, she and her father thereby became the joint owners of the joint accounts during their lifetime and that she became the complete owner of the funds remaining in the joint accounts upon his death, under the survivorship clause of their contracts with the banks.

It is the contention of appellant that this joint account arrangement was made not with the intention or purpose on the part of testator to create a joint tenancy with his daughter in the bank accounts, with right of survivorship in her to take the whole upon his death, but was an arrangement adopted by him merely as a matter of convenience during these later months of his life, in that the daughter was permitted to check upon the accounts for purposes of defraying their household and other living expenses.

As to what was the testator's intention, one of the officials of the bank states that when testator was talk-

ing with him about making this change in his bank account, he inferred from what he said that his intention was only to make the transfer of these accounts into joint accounts for the purpose of convenience in handling household expenses. Also, his daughter-in-law, Dorothy Armstrong (waiving the competency of her evidence), stated that she had talked with the testator but a short while before his death, had seen the bank books (which he showed her) carrying the joint accounts and that he had stated to her that he intended for these moneys he had saved out of his earnings to go to all his children alike.

However, another bank official, with whom testator had talked at the time of making this change in his accounts, testified that testator manifested his intention and desire, by what he said, to make his accounts joint accounts, with the right of survivorship in his daughter, rather than a change adopted merely for the matter of convenience.

The fact, too, is to be noted that here the daughter had faithfully and willingly given the best years of her life to careful attendance to her father's daily needs and comfort and that he was in turn deeply devoted to her and anxiously concerned and solicitous as to her comfort and welfare after his death. Also, at the time of this change in these accounts, it appears appellee was unmarried and had become a mature woman, nearly forty years of age, and it is in evidence that testator stated to one of his friends that he was making this arrangement, in changing his bank accounts, with a view to letting his daughter learn how to look after her business matters while he could advise and assist her.

However, dismissing this evidence as to what was the intention of the testator at the time of making this transfer of his individual accounts into joint accounts, his intent is made certain and is clearly expressed in the very terms of the deposit contracts had with the banks. Mr. Armstrong said in substance, as stated in appellees' brief:

"1. The depositors are opening a joint account:

"2. Each of the depositors shall alone have the right to check thereon;

"3. Upon the death of either of·the depositors, all of his interest in and claim upon the joint account, or any part thereof, shall cease;

"4. The estate of such decedent shall have no interest in or claim upon said joint account, or any part thereof;

"5. All funds standing to the joint credit of the depositors shall, upon the death of either, belong absolutely to the survivor."

It is difficult to see how he could have more clearly and with more certainty expressed his intention than in these specific declarations given by the contract of it.

Appellant's contention is that this was an ineffectual effort on the part of the father to make an inter vivos gift of the funds in the deposit accounts to the daughter, which remained an uncompleted gift and ineffectual, by reason of the fact that the father retained the right to revoke it by drawing out the entire funds of the joint accounts.

However, upon submission of the cause for judgment, the learned chancellor, while being of the view that the funds, originally owned and deposited by the testator, when afterwards changed to a joint account with survivorship clause, became the property of the daughter at his death and was a valid gift, yet, in adjudging that the appellee, upon the death of her father, took the then remaining amount of the deposits in the joint account as the sole owner thereof, based his opinion upon the "contract theory," the language of the opinion being:

"I think the controlling theory in this case is the contract theory as advanced by counsel for Miss Armstrong. From the day Mr. Armstrong placed these accounts in the joint names of himself and his daughter with the remainder to the survivor, the rights of the parties became vested. By agreement with his debtors (the banks) he had established in his daughter a vested interest in the debt (funds). This contract was supported, I think, by a valuable consideration, that is, the services rendered Mr. Armstrong by his daughter from the time of the death of his wife. He had recognized it and had

made a contract with the banks under which she was to receive new and well defined benefits."

The conclusion of his opinion is that "regardless of the gift theory or any other factor there has been a valid contract entered into between Mr. Armstrong, the banks, and Miss Armstrong under the terms of which Miss Armstrong became a joint owner of all funds in the banks during the lifetime of her father and the complete owner of all funds remaining when his death occurred."

The authorities supporting this contract theory, upon which the daughter was here found entitled to have the whole of the joint accounts upon her father's death, are ample and well-considered and are adopted by us as soundly sustaining the opinion of the chancellor, which was made the grounds and a part of the judgment so adjudging these funds to appellee.

Without expressing any opinion here, as same is not called for, as to the validity of the "gift theory" discussed by the learned chancellor, in that same was not made the basis of his decision, we approve of his application of the "contract theory," as here governing the question presented, and the judgment of the court based thereon.

Supporting the ruling of the chancellor, see the cases of Malone v. Sullivan and Williams, 136 Kan. 193, 14 P. (2d) 647, 85 A. L. R. 275; Deal's Adm'r v. Merchants' & Mechanics' Savings et al., 120 Va. 297, 91 S. E. 135, L. R. A. 1917C, 548; Kennedy v. McMurray, 169 Cal. 287, 146 P. 647, Ann. Cas. 1916D, 515; Mardis v. Steen, 293 Pa. 13, 141 A. 629; and also 5 Michie, Banks and Banking, page 99, section 46; 9 C. J. S., Banks and Banking, section 286, pages 595 and 596.

Finding our views in accord with those of the chancellor, his judgment is accordingly affirmed.