## Chipman's Adm'r v. Gerlach.

April 22, 1941.

Richard Priest Dietzman for appellant.

Lawrence S. Grauman and E. Balie Baker for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The only question is the sufficiency of the evidence to support a verdict for the defendant, Nell Gerlach, in an action of claim and delivery to recover possession of a diamond ring worth $500, prosecuted by the administrator of the estate of Cary Chipman. It is narrowed to the evidence relating to the delivery. Appellant concedes the proof shows that Chipman entertained the intention to give the ring to Miss Gerlach as or in lieu of an engagement ring, but denies that it establishes in any degree the essential element of a valid gift inter vivos that there was a delivery of the property by the donor to the donee with the intention of making the transfer of title take effect immediately.

It is undisputed that both in and out of Miss Gerlach's presence during the course of four or five years before his death on February 1, 1939, Chipman stated to friends that they were to be married and that the wedding had been postponed from time to time on account of the ill health of one or the other of them. Chipman especially was in poor health, having had heart trouble. The ring was his own and worn by him for some time. On one occasion in the latter part of 1935, when he disclosed his engagement to a friend and he looked at the lady's finger, which was bare of an engagement ring, Chipman said that he had given her his ring, which he was then wearing, and that he was going to have it made into a lady's ring but did not want to have it done at that time because she was sick and it would not fit her when she got well. He stated on another occasion that he was trying to find a ring to match his to give her, but if he could not he was going to give her that one. At another time he had told friends that it was Miss Gerlach's ring. Chipman's physician, Dr. Morris N. Weiss, had occasionally seen the ring on Miss Gerlach's hand and occasionally on his hand. She was wearing it when he was at a hospital once before his fatal illness, which was apparently in the summer of 1938. Her brother-in-law testified that she was wearing the ring the day after Chipman was taken to the hospital for his last illness. She had it when he died. During the course of the years Chipman had given Miss Gerlach several presents, including a bracelet bearing the inscription, "Chip to Nell." He had made her the bene-

ficiary of the reserve of his security payments to the Railroad Employees' Retirement Fund, and had otherwise manifested his devotion by holiday and birthday cards bearing endearing messages, and by continuous courtship. There is evidence likewise of her devotion to him. During his several illnesses Miss Gerlach was with him at the hospital a great deal and it was she who notified his family of his serious illness. His niece, Mrs. Mildred Kennedy, and her husband came to Louisville the day before he died.

Chipman's administrator testified that he was wearing the ring in November, 1938, with some rubber bands on it, and suggested that it was too large and he was going to have it cut down. Mrs. Kennedy testified that he was wearing it when he and Miss Gerlach visited in his sister's home in Tennessee in September of that year. The only other evidence inconsistent with the story affording quite consistent proof of a completed gift is that of the niece as to what occurred on Wednesday the day he died. She testified that her uncle was not able to speak but could nod his head "yes" or "no." She noticed he was not wearing his ring, and "I asked him where it was, and he pointed over to his grip on the floor. I got the grip and set it down alongside of his bed. Then I handed him the billfold. He took it and pointed like this and simply handed it back to me. I picked up some more things. He said, 'no' and I set it back down on the floor. I went to his bedside and asked him if he reckoned Miss Gerlach had it, and he says, 'yes.' So I said, 'Cary, do you want me to get the ring and keep it until you get well?' and he says, 'yes.' '' She asked her uncle the same question several times in order to satisfy herself that he knew what he was saying and each time he answered "yes." That evening shortly before he died, she asked Miss Gerlach about the ring and she stated she had taken it out of his billfold for fear somebody would get it and had it at her home. She told Miss Gerlach she would have to have the ring and she responded that Mrs. Kennedy would have to get an order for it. After Chipman's death, Miss Gerlach refused to surrender the ring, claiming that it had been given to her as an engagement ring.

In rebuttal, Miss Gerlach testified that about half an hour before Chipman's death Mrs. Kennedy demanded that she go home and get the ring. She made

no response and walked out of the room because she didn't think it was a proper time to be talking about such things. As she was leaving the hospital the niece created a scene by her demands for the ring. Chipman's doctor and his nurse testified that he had not been able to talk at any time during that day, and the doctor related that he had been practically unconscious since Monday night preceding his death Wednesday night.

It is indisputable that in every gift a delivery of the thing is essential to validity. Although every other step be taken, if there is no delivery there is no gift. Intention without consummation is not enough. Were it otherwise, the door to fraud and perjury would be opened, especially where a gift is claimed by parol evidence after death of the alleged donor. Moore's Adm'r v. Edwards, 248 Ky. 517, 58 S. W. (2d) 915; Cochran's Adm'x v. Cochran, 273 Ky. 1, 115 S. W. (2d) 376; Pikeville National Bank & Trust Company v. Shirley, 281 Ky. 150, 135 S. W. (2d) 426, 126 A. L. R. 919. The fact of manual possession of a chattel obviously is not in and of itself sufficient to warrant the presumption that there had been an actual delivery of it and an irrevocable and unconditional transfer of title. But possession is always an element in the donee's favor and an undisputed record of often repeated statements of the donor that he intended to give or had given something to the one who has possession of it gives rise to a factual presumption or inference that that intention had been consummated. Possession is open to explanation and the force of the inference to uphold the claim of the donee of an executed gift is weakened if the donor is dead and the donee had ready access to his property and effects. Of course, circumstances alter cases and the peculiar facts of each determines the strength or weakness of the inference of a consummated gift which possession affords. They may create the antithetical presumption that there was no gift. Thus, in Moore's Adm'r v. Edwards, supra, to cite an extreme instance, although the claimed donee had possession of some securities which had belonged to a deceased person, the circumstances afforded the clear inference that the possession was obtained by fraud and undue influence and that there had not been a valid gift inter vivos.

The evidence does not disclose just when and where complete or final delivery was made. Though Miss Ger-

lach offered to testify concerning it, the plaintiff invoked the law that sealed her lips because death had silenced his. As stated in Moore's Adm'r v. Edwards, supra [248 Ky. 517, 58 S. W. (2d) 915]:

"Gifts first asserted after death of the donor are regarded with suspicion and must be established by clear and convincing evidence, particularly where the relations are such as existed here. In such cases the courts will closely scrutinize the transaction claimed to constitute the gift."

But can it be said that this gift was first asserted after death? Here we have a man and woman engaged to be married and the property involved a diamond ring, the conventional symbol of betrothal. Here we have undisputed expressions of the donor of his intention to give it to the donee as an engagement ring, and other statements that he had done so. Furthermore, she had worn it during the previous summer, was wearing it a few days before his death, and had it when he died. True, during the course of the years Chipman also wore the ring himself, but that is not irreconcilable nor is it conclusive that he had not given it to his fiancee, especially during his later days. It was a man's ring and too large for either of them. The nature of the article and the relationship of the parties are important factors in a case of this kind. Thus, in Hall's Adm'x v. Hall's Adm'r, 145 Ky. 751, 141 S. W. 70, a man had given a diamond ring to a girl to whom he was engaged, but it had been returned to him because her mother had objected and caused it to be done. He had written that he would not take it back again, but if her mother persisted in her objection he would wear the ring until they were married when he would have the gem made into a brooch for her. They were married but the man lived only a short while afterward. We expressed the view that his wearing the ring after the marriage was not enough to indicate that it was given back to him, and ruled that judgment should be rendered for the donee in an action by the husband's administrator to recover the ring from his widow. Partial or joint retention or use of an article is not conclusive evidence that there was no gift. Thus, in Morgan v. Williams, 179 Ky. 428, 200 S. W. 650, we upheld a verdict finding that there had been a gift and delivery of an automobile to one reared by the donor with whom she lived, even though the de-

ceased donor had listed it as her own property, kept it in repair, bought gasoline and oil and kept it in her garage. Cf. Williamson v. Yager, 91 Ky. 282, 15 S. W. 660, 13 Ky. Law Rep. 273, 34 Am. St. Rep. 184; O'Brien's Adm'x v. Murray, 272 Ky. 197, 113 S. W. (2d) 1162.

When all the circumstances tending to establish a legal delivery of the ring are marshalled, they are found sufficient to take the case to the jury on that issue. The jury accepted that circumstantial evidence rather than the fact of possession of the ring by the alleged donor, probably most of the time during which he was saying he intended to give it to the donee or had done so, and the testimony of the niece of the donee's admission tending to disprove her claims.

Wherefore the judgment is affirmed.