No. 35,492

In the Matter of the Estate of C. A. Crawford, Deceased (ANNIS L. CRAWFORD, Claimant, *Appellant*, v. MILDRED GRACE RUCKER, as Administratrix, etc., *Appellee*).

(125 P. 2d 354)

Opinion filed May 9, 1942.

*Vincent G. Fleming*, of Larned, argued the cause, and *R. L. Young*, of La Crosse, and *W. H. Vernon*, of Larned, were on the briefs for the appellant.

*Roscoe E. Peterson*, of Larned, argued the cause for the appellee.

The opinion of the court was delivered by

HOCH, J.: Appellant sought to establish claims against the estate of her deceased husband. A motion to strike certain parts of the petition, a demurrer, and a motion to dismiss were sustained, and she appeals. Two principal questions are presented—whether the statute of limitations runs as between husband and wife, and whether the petition stated a cause of action.

C. A. Crawford, a resident of Pawnee county, died intestate on

September 10, 1939, leaving as his heirs at law the widow, Annis L. Crawford, and Mildred Grace Rucker, a daughter by an earlier marriage. The widow and daughter were named jointly as administratrices, and on January 3, 1940, inventory and appraisement were filed showing personal property valued at $2,014.91 and farm land valued at $12,999. The only claims presented were the funeral bill and that of the widow, here involved. The regularity of the procedure is not questioned.

Appellant's amended petition alleged in substance that at the time of his death her husband was indebted to her in the sum of $10,350.63 "for money and property of her separate estate which he had taken, held, used, sold, invested, commingled with his own property and spent," and that such money and property "were not acquired by decedent from petitioner's separate estate by gift or purchase." The alleged indebtedness was itemized under four general classes. In Item I were listed, by date and amount, one hundred and three checks, covering a period from December 1, 1914, to November 19, 1928, which, it was alleged, constituted "money of petitioner's separate estate taken by decedent's drawing checks upon petitioner's bank account and all used for his own personal use, benefit, business and affairs." These items totaled $4,980.67. In Item II were likewise listed one hundred and eleven checks, written by petitioner, covering a period from August 25, 1914, to September 11, 1939, and totaling $935.46, which it was alleged constituted "money of petitioner's separate estate necessarily advanced for the use and benefit of decedent by petitioner's payment thereof for necessities of life which decedent was legally obligated to provide for petitioner, *thus creating by implication of law a trust relationship whereby decedent was and is obligated to repay petitioner for her said advancements for his use and benefit.*" In Item III were listed certain livestock and seed wheat which petitioner alleged either belonged to her separate estate at the time of her marriage in 1914, or was inherited from her father's estate in 1919, or taken and used by her husband in 1920, and all of which, of an alleged value of $4,309.50, "was taken by decedent and used for his own personal use and benefit." Item IV consisted of two alleged loans to decedent in 1915, for "purchase of a suit of clothes" and "payment of wages of a farm laborer," and one in 1924 "for travel expenses of decedent on a trip to Illinois," the three alleged loans totaling $125.

Decedent's daughter, Mildred Grace Rucker, was appointed sole administratrix for the purpose of hearing the widow's demand. At the hearing in the probate court the administratrix moved to strike from the petition all of Items I, III and IV and all of the separate items in Item II up to and including the check written by claimant on July 28, 1937, on the ground that it appeared on the face of the petition that all such claims were barred by the three-year statute of limitations. (G. S. 1935, 60-306, *Second.*) The administratrix also moved to strike out the words heretofore indicated by italics in Item II, on the ground that such allegations constituted a mere conclusion of law. The administratrix also demurred to the petition on the ground that no cause of action was stated against the estate, and also moved to dismiss the petition. The motions and demurrer having been overruled in probate court, appeal was taken to the district court, where, after hearing, the motions and the demurrer were sustained.

The question whether statutes of limitation run as between husband and wife has not been passed upon directly by this court. The decisions in other jurisdictions must, of course, be viewed in the light of the provisions of law upon which they are based. While an apparent conflict in such decisions disappears, in many cases, upon critical examination of the divergent statutes underlying them, a wide and irreconcilable conflict of authority still remains. (34 Am. Jur. 292, § 377; 121 A. L. R. 1384-1396; 30 C. J. 991; 37 C. J. p. 1012, § 408.) Appellant recognizes this conflict, but urges that the majority rule is that the statutes do not begin to run until the marriage relationship ceases, and cites generalizations of textbook writers which support that contention. We need not attempt here to balance these conflicting holdings against each other. It is sufficient to examine the question in the light of our own statutes and decisions.

Decisions grounded on the common-law disabilities of coverture are obviously not in point in jurisdictions where such disabilities have been abrogated. No state has gone further than this state in doing away with such disabilities and in establishing the full equality of women, whether married or single, with men under the law. Our constitution directed (art. 15, § 6) that "The legislature shall provide for the protection of the rights of women, in acquiring and possessing property, real, personal and mixed, separate and apart from the husband; and shall also provide for their equal rights in

the possession of their children." By the Married Women's Act of 1868 and by subsequent enactments (G. S. 1935, 23-201 to 23-207) a married woman retains as her sole and separate property any property which she owned at the time of her marriage or which may come to her after marriage, either by descent, devise, bequest, or gift from any person except her husband, and such property is not subject to her husband's debts or to disposal by him; she may sue and be sued in the same manner as if unmarried; she may carry on trade or business and perform any labor or services on her sole and separate account and retain the earnings therefrom as her sole and separate property; she may bring action in her own name to recover damages, for the benefit of her husband, for personal injuries impairing her ability to perform domestic duties; if her marriage took place outside this state and her husband becomes a resident of this state she retains all the property rights which she had acquired under the laws of any other state, and she may freely enter into reasonable and equitable marriage settlements or contracts. Such is the broad background in which the instant question must be viewed in this state.

In many states the statutes of limitation contain express provision that they shall not run as between husband and wife. Our statutes (G. S. 1935, ch. 60, art. 3) contain no such reservation or exception. The establishment of exemptions or exceptions to statutes of general application is a legislative and not a judicial function. Upon this point appellant relies upon a general provision of our statute (G. S. 1935, 60-307) which reads:

"If a person entitled to bring an action . . . be at the time the cause of action accrued *under any legal disability,* every such person shall be entitled to bring such action within one year after such disability shall be removed." (Italics supplied.)

Her contention is that the marriage relationship constitutes a "legal disability" within the meaning of the statute, even though legal disabilities imposed by the common law have been removed. There are cases supporting that view. (34 Am. Jur. 167, § 209.) On the other hand, there are many courts which hold that even where the statutes of limitation have a specific provision tolling the statute as between husband and wife, the subsequent passage of Married Women's Acts abrogating the common law disabilities incident to coverture, repeals, by necessary implication, the exemption in the statutes of limitation. (*McIrvin v. Lincoln Memorial Uni-*

*versity,* 138 Tenn. 260, 197 S. W. 862. For statement of conflict of authority on this question see L. R. A. 1918C, 193 *et seq.* Also, 37 C. J. 1012, § 408, note 60.) And while there is also conflict on the question of whether a statutory provision, such as ours, giving a married woman the right to sue and be sued in the same manner as though single gives her the right to sue her husband (see 27 Am. Jur. 190, § 588), it is stated in Corpus Juris (30 C. J. 991, § 728) that where married women are empowered to sue, as if single, a proviso in statutes of limitation exempting married women from the bar of the statute is generally held to be repealed. Furthermore, the general rule is that even without the aid of a statute a married woman may sue her husband in respect to her separate property or to recover money loaned to him from her separate estate. (30 C. J. 954, § 674.)

In the light of our liberal and far-reaching statutes in behalf of married women, we do not think it can be said that the marriage relationship constitutes a "legal disability" within the meaning of 60-307 above. It was said in *Putnam v. Putnam,* 104 Kan. 47, 52, 177 Pac. 838, that "the term 'coverture' is hardly known in the Kansas language; the wife is not under legal disabilities of any sort."

Appellant makes two further arguments against imposing the bar of the statute against her claims. The first is that as a matter of public policy the statute should not run during marriage because domestic discord would be promoted if a wife, in order to protect her rights, were compelled to bring action to enforce her husband's indebtedness to her. In addition to the fact that our legislature has not embodied that view in our statutes—as some states have done in the proviso relating to marriage—it may be said that from the standpoint of public policy there is also something to be said on the other side. What about the jeopardy to the interests of other heirs—in this case the decedent's daughter and appellant's step-daughter—if a widow were permitted to set up old claims against her husband, supported only by her own averments and which the other heirs would frequently have no means of disproving? Apparently the legislature was not convinced that heirs other than the widow should be thus subjected to such possibility of losing their rightful inheritance.

Appellant's second argument is that the claims are not barred because a trust relationship existed, as alleged in the petition. In the first place, no facts were alleged which would create a trust. The

bare allegation of the petition that a trust was created is a mere conclusion of law and was rightly stricken from the petition. No express trust was alleged; no allegation that there was any understanding or agreement between appellant and her husband that he would hold the property or the money received in trust for her. The mere fact that she turned over property to her husband or paid bills for him was not in itself sufficient to create a trust by implication of law. (*Clester v. Clester,* 90 Kan. 638, 135 Pac. 996; *Pricer v. Simonton,* 134 Kan. 211, 5 P. 2d 835; *Fooshee v. Kasenberg,* 152 Kan. 100, 102 P. 2d 995.) Furthermore, petitioner does not attempt to impress a trust upon any particular property. She does not contend that any of her property which she alleges was taken by her husband and used for his own benefit is still in existence. She presents her demands solely as a general creditor.

We conclude that the trial court was correct in holding that the statute of limitations was applicable to appellant's claims.

After striking from the amended petition all items which on their face are barred by the three-year statute of limitations there remain only twenty-six items in a total amount of $238.26. These items consist of bank checks which appellant herself wrote on her own account, payable to various persons and concerns, and which she alleges were advanced to her husband to cover expenditures which he was legally obligated to make for her support. We think the question of whether as to these items the petition stated a cause of action requires only brief comment. The petition in no way indicates the nature or purpose of these expenditures; it contains no allegation that there was any agreement or understanding between her and her husband that he was to reimburse her for the money so advanced for his benefit; there was no allegation that the alleged transactions were not freely entered into by appellant or that there was any breach of faith on the part of the husband. There is no allegation that she ever asked him to make repayment or sought in any way, during his lifetime, to protect the claims which she now makes. We think that no cause of action was stated and that the demurrer was properly sustained.

The judgment is affirmed.