## Bishop et al. v. Bishop's Ex'x (two cases).

March 23, 1943.

Davis Williams and Dowling & Baird for appellants.

C. E. Nichols, Harry H. Wilson and Larimore & Craddock for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming in part and reversing in part.

These two appeals grow out of an action filed by the appellee, Mrs. Mildred Bishop, as executrix of the estate of her husband, E. B. Bishop, to sell the realty and settle his estate. Mrs. Bishop had previously renounced the provisions of her husband's will. The appellants were made defendants in that action. They filed an answer and counterclaim denying all of the allegations in Mrs. Bishop's petition. They also set forth that, at the time of Mr. Bishop's death, he had $1,253 in the Horse Cave State Bank which should be applied to the payment of his debts before any of his real estate be ordered sold. In her reply Mrs. Bishop set up her claim to the aforementioned bank account. The first judgment, which was entered January 8, 1941, held that the bank account ($1,184.47) was the property of Mrs. Bishop. We will discuss first the appeal from that judgment.

It was stipulated that the cashier of the Horse Cave State Bank would testify that a few days prior to March 8, 1938, E. B. Bishop, then 92 years of age, came to the bank and consulted with him with reference to his deposits, and stated he wanted to so arrange them that should he die before his wife, Mildred Bishop, she would

receive and get the benefit of them; that he and his wife had agreed to consolidate their funds, whatever they were, and to do it in such a manner that in case either died the survivor should be the owner of whatever remained on deposit; that he told Mr. Bishop, if he and his wife would put their money in a joint account in the name of both, with the thorough understanding that either could draw checks on the account, and at the death of either of them whatever remained in the joint account should become the property of the survivor, the agreement would be binding; that Mr. and Mrs. Bishop came to the bank and discussed the matters aforementioned and that he again advised them the necessary steps to take and "they then and there agreed with each other and with him" that they would place their individual accounts in an account headed "Mr. or Mrs. E. B. Bishop, Payable to Either One or the Survivor"; that Mr. Bishop placed his account of $404.64 in the joint account, and Mrs. Bishop placed her account of $49.57 in it; that he issued a certificate to them marked for the credit of Mr. or Mrs. E. B. Bishop, payable to either one or the survivor, with the full understanding by and between them and each of them that either could draw on the account so long as they lived, and at the death of either one or the other the survivor was to receive the benefits of the joint account; that Mr. Bishop said when he first came to the bank "the main reason for doing this was that he did not want his son, John Bishop, to get this money away from his wife or draw checks on him"; that Mr. Bishop was rational at the time of the aforementioned transactions and that the arrangement was not made in contemplation of death; that all of the money deposited in the joint account was money which Mr. Bishop received from the United States Government in the way of pensions; that he signed checks on the account as "E. B. Bishop"; that Mrs. Bishop drew no checks on the account; and that there remained the sum of $1,184.27 in the joint account at the time of Mr. Bishop's death.

We have set forth at some length the agreed statement of facts surrounding the creation of this joint bank account because it has been held frequently that the controlling question in such cases is, whether the person or persons opening such an account "intentionally and intelligently" created a condition embracing the essential elements of joint ownership and survivorship? 7 Am.

Jur. p. 300. See, also, Menger v. Otero County State Bank, 44 N. M. 82, 98 P. (2d) 834. It is set forth in 7 Am. Jur., p. 299, that it is well established that a bank account may be so created that two persons shall be joint owners thereof during their mutual lives, and the survivor take the whole on the death of the other. It goes without saying that Mr. and Mrs. Bishop "intentionally and intelligently" created a condition providing for the joint ownership of the funds they had in the bank at the time of the opening of the joint account, and also that they intended that there be a survivorship. It is significant that Mrs. Bishop contributed to the joint account, though an examination of the authorities on the question reveals that such would not have been necessary to create a survivorship.

An examination of the Annotation entitled Deposit in Name of Depositor and Another in 103 A. L. R. 1123, will show that joint deposits with survivorship provisions have been upheld in a number of jurisdictions. They have been upheld on the theory of a gift, the theory of a trust, the theory of a joint tenancy, and also, more recently, on the theory of a contract. The new or contract theory has been followed in Massachusetts, Kansas, Illinois, Wisconsin and Utah. See 103 A. L. R. 1140. The contract idea is based upon the agreement or deposit contract between the bank, the donor and the donee, where only one of the parties has contributed to the account. As said in the case of Goldston v. Randolph, 293 Mass. 253, 199 N. E. 896, 103 A. L. R. 1117, a transfer of this nature is not a gift of the deposit as such, but rather a gift of the interest therein created by the contract. It is clear from the cashier's statement that there was an agreement between Mr. and Mrs. Bishop and himself as to the manner in which the bank accounts of the Bishops should be transferred to a joint account with a survivorship. Clearly, there was a contractual relationship involved herein, because both of the Bishops contributed all of the funds they had in the bank to the joint account. Also, it is fair to assume from the arrangement they entered into that such funds as might come into their hands would be placed in the joint account. Certainly Mr. Bishop made it clear that he wanted his wife and not his son to get the benefit of his money. Not only did he place all of the money he had when the agreement was entered into in the joint account, but, subsequently, he deposited his pension checks to that

account. There was created an estate to which each of the Bishops should have access and could use during their lifetimes, and to which the survivor should be entitled.

The Menger case, supra [44 N. M. 82, 98 P. (2d) 835], was decided in 1940. There the account was opened in the name of ''Mr. Elmer Watkins or Mrs. C. M. Watkins,'' husband and wife. Mrs. Watkins was adjudged the owner of the account upon the death of her husband, because there was evidence to show that he wanted it to go to her in case she outlived him. A number of authorities are reviewed in that opinion, and it is said therein: ''But if there be substantial evidence from which the intention of the parties may be ascertained, and it is the intention to make a gift, create a joint estate, or set up a trust, then this action does accomplish such results.'' Citing.

As heretofore pointed out, there can be no question of the intention of the Bishops to create a joint bank account with a survivorship.

In so far as we have been able to discover, this is our first case in which the question has been put squarely before us, though in the recent case of McKnight's Adm'x v. McKnight, 282 Ky. 522, 139 S. W. (2d) 426, a savings account which was changed from the name of a mother to that of her and her son with a survivorship provision was challenged only upon the ground that the mother lacked mental capacity at the time of the change. Since the question is one of first impression, we have decided to uphold the right of Mrs. Bishop to the remainder of the joint account upon the contract theory. Especially do we believe this to be proper when we consider the facts that Mr. and Mrs. Bishop went to the bank and discussed with the cashier what they desired to do; that both of them placed all the money they then had in the bank in the joint account; and the arrangement was agreed to by and between the Bishops and the bank cashier. Clearly, rights were established which could not have been brushed aside by the acts of one of the parties, even though the agreement would have permitted either of the Bishops to withdraw all of the money from the account.

The second judgment was entered in May, 1941. It directed the setting aside of a homestead for Mrs. Bishop, the sale of the remaining realty to pay the debts of the

estate, and a division of the remainder of the proceeds. among the heirs. No proof was taken before the entry of this judgment, even though all of the allegations of the petition were denied and some of the defendants were infants and others nonresidents. Furthermore,. the cause was not referred to the master commissioner to ascertain the claims against the estate, as was asked in the petition. The appellee does not contend that the second judgment should be upheld. Her view is that. the primary question involved in both appeals concerns the ownership of the joint bank account. Regardless of whether this view is correct, we think the May judgment should be reversed, with directions that such steps be taken as may afford a proper and orderly settlement of Mr. Bishop's estate.

Wherefore, the appeal from the judgment entered in January, 1941, is affirmed, and the appeal from the judgment entered in May, 1941, is reversed.