**J. Smith HAYS, Sr., Appellant,**

**v.**

**Iva Coy HAYS' ADM'R et al., Appellees.**

**J. Mack COY, Adm'r, et al., Appellants,**

**v.**

**J. Smith HAYS, Sr., et al., Appellees.**

Court of Appeals of Kentucky.

March 23, 1956.

As Modified on Denial of Rehearing
June 22, 1956.

Robert H. Hays, Lexington, William Hays, Winchester, for appellants.

Wiggins & Wiggins and E. Selby Wiggins, Richmond, for appellees.

CLAY, Commissioner.

These consolidated appeals arise out of the settlement of the estate of Iva Coy Hays, wife of J. Smith Hays, Sr. The present controversy involves conflicting claims between the administrator and Mr. Hays with respect to two items in the respective amounts of $8,000 and $3,000. The Chancellor disallowed Mr. Hays the $8,000 item and adjudged him entitled to the $3,000 item.

### The $8,000 Item

In 1940 Mrs. Hays purchased with her own funds eight $1,000 U. S. bonds, made payable to "Iva Coy Hays or J. Smith Hays". In 1950, when the bonds matured, they were cashed by Mr. Hays and the proceeds deposited by him in a bank to the account of "Iva Coy Hays or J. Smith Hays, joint tenants with the right of survivorship." Mrs. Hays signed the signature card creating this joint account.

It is the claim of Mr. Hays that his wife made him an inter vivos gift of an interest in these bonds in 1940 and that the gift was somehow consummated or ratified when the joint account was created. The controlling question is whether or not Mrs. Hays *intended* to make a gift of these bonds to her husband.

It is a general rule that gifts inter vivos, first asserted after the death of the donor, are regarded with suspicion and must be established by clear and convincing evidence. Chipman's Adm'r v. Gerlach, 286 Ky. 157, 150 S.W.2d 633. This is particularly true where the relationship of the parties is one of a confidential nature. O'Brien's Administratrix v. Murray, 258 Ky. 140, 79 S.W.2d 414. As said in Brown's Adm'r v. Brown, 308 Ky. 796, 215 S.W.2d 971, at page 976:

" 'Where a close and confidential relationship between the parties is shown, the evidence to support the gift must be of such quality as to leave no reasonable doubt about the transaction * * *.' "

It was clearly shown that a close and confidential relationship existed between Mr. and Mrs. Hays. For many years the husband had handled his wife's financial affairs. He wrote checks on her accounts and invested and reinvested her money. He kept her stocks and bonds in a lock box rented by him. He was a successful businessman, and his wife appears to have had complete confidence in him.

It is true that the appearance of Mr. Hays as a joint payee on the face of the bonds and the creation of the joint bank account was evidence that Mr. Hays may have had some interest in either or both. However, the proven facts refute this inference. It is apparent the bonds and the account were thus handled for the convenience of Mrs. Hays and to permit her

husband to act as her agent. Apparently she was not aware of the legal effect of the survivorship provision on the account card she signed.

There is persuasive evidence establishing that Mrs. Hays had no intention of giving the bonds or the bank account to her husband. In the first place, Mr. Hays, who was freely permitted to testify concerning transactions with the deceased, at no time stated that his wife had ever expressed any intention of giving him the bonds or the bank account. Secondly, in her will Mrs. Hays had listed the bonds as part of "my investments". In the third place, Mr. Hays testified that his wife had on numerous occasions expressed the wish that the $8,000 be used for the last illness and burial expenses of herself and her husband. The evidence was insufficient to establish an intention to make a gift in her lifetime. At the very least there was no clear and convincing evidence of such an intent, and the finding of the Chancellor to that effect was not clearly erroneous. CR 52.01.

■ It seems to be the alternative position of Mr. Hays that if no gift was proven, the creation of the joint bank account constituted a contract with the bank of which he was a third party beneficiary and that Mrs. Hays' estate is bound by the terms of that agreement. In support of that position, the cases of Armstrong's Ex'r v. Morris Plan Industrial Bank, 282 Ky. 192, 138 S.W.2d 359, and Bishop v. Bishop's Ex'x, 293 Ky. 652, 170 S.W.2d 1, are cited. While such a contract principle may be applicable in the proper case, in the situation we have before us two necessary elements upon which those decisions were based are lacking. They are, first, a conscious intent to create a binding obligation; and second, mutual valuable considerations to support the contract.

We conclude that the Chancellor correctly adjudged this item.

### The $3,000 Item

In disallowing the claim of the administrator against Mr. Hays with respect to the $3,000 item, the court determined that it either constituted a gift or was barred by the statute of limitations. Applying the same principles heretofore discussed, we are doubtful if the evidence justified the finding of a gift. In 1929 Mrs. Hays paid over to her husband the sum of $3,000 to be used in paying off a mortgage on their home. The obligation to return this money (if it was not a gift) arose out of an implied contract. As such it would ordinarily be barred after five years under KRS 413.-120.

■ It is the contention of the administrator that since Mrs. Hays was a married woman she was under the disability of coverture and the statute of limitations did not run against her, particularly with respect to her claim against her husband. Prior to 1934 this disability did exist. Section 2525, Carroll's Kentucky Statutes (1930). However, in 1934 this statute was amended and "married woman" was dropped from its provisions. The amendment was effective January 1, 1937, and after that date a married woman could not claim the disability of coverture even with respect to causes of action accruing prior to 1934. Jackson v. Evans, 284 Ky. 748, 145 S.W.2d 1061; Flynn v. Fike, 291 Ky. 316, 164 S.W.2d 470.

■ It is apparently the contention of the administrator that even though the disability of coverture has been removed as to married women generally, the common law rule of disability as to claims between spouses, based on the policy of the law to refrain from fostering domestic discord, should still prevail. There is some authority for this view. See 121 A.L.R. 1382, 1393. However, we do not consider it sound.

In the recent case of Brown v. Gosser, Ky., 262 S.W.2d 480, we carefully reexamined the effect of our Married Woman's Act of 1894, KRS 404.020. In confirming the right of a married woman to sue her husband for a tort, we pointed out that the common law concept of disability arising from coverture no longer

had independent force. While recognizing that the possibility of domestic discord is a matter of public policy, we advanced the unanswerable proposition that the legislature had spoken on the subject.

The underlying reasons for the decision in that case are applicable to our limitation statute. Under KRS 413.170 (formerly Section 2525, Carroll's Kentucky Statutes, 1936), the disabilities which will toll the running of the statute of limitation are limited to those of infancy and unsound mind. As above noted, the disability of coverture was deleted from the statute by the legislature in 1934.

In well reasoned opinions by the Supreme Courts of Iowa, Tennessee, Kansas and Ohio, it has been held that the statute of limitations bars the claim of a married woman against her husband the same as against any other person, when the legislature has given her the right to sue and has failed to exempt her specifically from the operation of such statutes. In re Deaner's Estate, 126 Iowa 701, 102 N.W. 825; McIrvin v. Lincoln Memorial University, 138 Tenn. 260, 197 S.W. 862, L.R.A.1918C, 191; In re Crawford's Estate, 155 Kan. 388, 125 P.2d 354; In re Lange's Estate, Ohio App., 91 N.E.2d 546. We believe the soundness of the cited cases is self-evident, and that the question of public policy in this connection addresses itself to the legislature and not to the courts. See also 121 A.L.R. 1382.

■ This claim has long since been barred.

The judgment is affirmed.

HOGG, J., dissents.

Judge HOGG dissents to so much of the opinion as charges to Mr. Hays the $8,000 item upon the ground that a joint bank account with right of survivorship was expressly created. He believes that the controlling question is whether Mrs. Hays intentionally created a condition embracing the essential elements of joint ownership and survivorship.