**Clarence N. HOFFMAN, Executor of the Estate of Harry J. Hoffman, Appellant,**

**v.**

**RUSSELL FEDERAL SAVINGS & LOAN ASSOCIATION et al., Appellees.**

Court of Appeals of Kentucky.

May 14, 1965.

Charles S. Sinnette, Ashland, for appellant.

Robert Matthews, Atty. Gen., David Murrell, Asst. Atty. Gen., Frankfort, for appellee.

W. H. Dysard, Dysard, Johnson & Welch, Ashland, Oscar Sammons, Greenup, for appellant.

Charles M. Daniels, Greenup, for appellees.

ROBERT O. LUKOWSKY, Special Commissioner.

On March 9, 1956 Harry Hoffman opened Investment Share Account No. I–594 in the Russell Federal Savings and Loan Association. In opening the account he executed a "joint holders share account card." The account was opened in the names of (Mrs.) Sibbia E. Hoffman or Harry Hoffman. Mrs. Hoffman, the mother of Harry, did not execute the account card.

The card contained, among other things, the following language:

"The undersigned hereby apply for membership and for an investment share account. * * * and for the issuance of evidence of the membership in the approved form *in the joint names of the undersigned as joint tenants with the right of survivorship and not as tenants in common.*" (Emphasis supplied.)

On March 9, 1956 Harry deposited $6,000 in the account and certificate number 736 was issued in the names of Mrs. Sibbia E. Hoffman or Harry Hoffman. On July 5, 1956 Harry deposited $5,000 in the account and certificate number 748 was issued in the names of Sibbia Hoffman or Harry Hoffman. On February 7, 1958 Harry deposited $9,000 and certificate number 868 was issued in the names of Sibbia Hoffman or Harry Hoffman.

On February 14, 1959 (Mrs.) Sibbia E. Hoffman died testate. Her will made no reference to this account or to these certificates and it contained no residuary clause. Apparently, after her death, the Association was originally willing to pay over the funds represented by the account and the certificates to Harry if he supplied them with a release of inheritance tax lien. Harry failed to do this and thereafter an issue as to the ownership of the account and the certificates arose.

On October 21, 1961 Russell Federal Savings and Loan Association filed a petition for declaration of rights in which it asked the Greenup Circuit Court to determine whether the funds represented by the account and certificates should be paid to Harry individually or to the heirs at law of Sibbia Hoffman. The heirs at law of Sibbia Hoffman were her surviving children and the children of her deceased children. Two of her children filed answers that the funds belonged to Harry. The remaining children and grandchildren filed an answer asserting the funds were the property of the estate of Sibbia E. Hoffman and, consequently, should come to her heirs at law.

The deposition of Harry Hoffman was taken as if on cross-examination on February 5, 1962 and in chief on April 4, 1962. At the time of the taking of these depositions he was over sixty years of age. During the pendency of this action and prior to its decision by the Greenup Circuit Court Harry J. Hoffman died testate and the action was revived as to him in the name of Clarence N. Hoffman, Executor of his estate.

All of the facts in regard to the ownership of this money and the relationship between Harry and his mother must be drawn from his depositions. The testimony of other witnesses primarily established nothing but kinship. In his depositions Mr. Hoffman was permitted by the parties to tell the facts as he understood them. No objections were made to his testifying and no witness contradicted the things that he said.

When Harry was two years old he was crippled and he carried this affliction throughout the remainder of his life. In 1946 he suffered a nervous breakdown. During most of his life he worked in his father's store. He started when he was five years of age at a rate of six cents a day and gradually advanced his earnings to the sum of $2 per day. He was unable to support himself exclusively from his own efforts, although he did accumulate some money and bonds of his own.

All of the other children married and left the ancestral home. Apparently two of the children answered the siren call of John Barleycorn. Harry never married and lived his entire life in the ancestral home with his father and mother. For the last eighteen years Harry left his mother only when he was confined to the hospital.

He managed the affairs of his mother for several years prior to the death of his father because of the illness of his father. After the death of his father he managed his mother's affairs for some twenty-three years prior to her death. He stated he did this because his father told him to always be good to his mother and see that she did not want for anything. During the years he lived with his mother and after his father's death it is clear that he did his best to look after her welfare.

His father left his mother approximately $26,000. In addition to that his mother had some property of her own which she acquired from her husband by inter vivos gifts. The evidence discloses that she was generous to all of the children other than Harry and we will hereafter discuss her relationship with him. At the time Harry's father died Mrs. Hoffman had a personal bank account in her name only, which was closed shortly after the death of the elder Hoffman and a bank account was opened in the joint names of Harry and his mother. Mrs. Hoffman was uneducated and Harry attended to all of her affairs, including her income from the sale of property and rental of real estate. These receipts were deposited in the joint bank account. At least at one period of time Harry maintained a separate bank account in his name only.

Mrs. Hoffman sold a farm for $2,500, a house at West Russell for $2,900, and two old shacks across the railroad for $8,000. She turned this money over to Harry and it was placed in the joint bank account. Har-

ry testified that he placed money of his own in the joint bank account, although specific sums and sources were not identified or remembered by him. The deposits which represent the investment share account and the certificates were made by Harry's drawing checks on the joint bank account.

Harry did not hesitate to acknowledge that these and other sums of money were turned over to him by his mother. He, in effect, stated repeatedly that these sums were given to him absolutely and that he and his mother both considered that they became his property. His testimony indicated that his mother wanted to give him everything but that he would not take it. He stated repeatedly that when his mother gave him money she made it clear that he could do as he pleased with it.

Harry maintained that it was his idea to transfer the money from the joint bank account to the Russell Federal Savings and Loan Association so that it could earn interest and so that if anything happened to him the money would revert to his mother. Certainly, his execution of the account card would accomplish this. According to Harry's testimony his mother knew all about the money deposited in the bank account and in the savings and loan account.

Based upon these facts and the opinion of this court in Hays v. Hays' Adm'r, Ky., 290 S.W.2d 795,[1] the trial court found and concluded that the funds represented by the savings and loan account and the investment certificates were the property of the heirs at law of Sibbia E. Hoffman, because of the failure of Harry Hoffman to prove that the funds received by him from his mother were inter vivos gifts and to prove personal contribution to the deposits in the savings and loan association.

It is from a judgment effectuating these findings and conclusions that the executor of the estate of Harry Hoffman appeals.

■ CR 52.01 enjoins us not to disturb the findings of fact of the trial judge unless they are clearly erroneous and to give due regard to the opportunity of the trial court to judge the credibility of the witnesses. The crucial testimony in this case was presented to the trial court by depositions. Consequently, we feel a certain elasticity in our examination of this case. Clay's, Kentucky Practice, CR 52.01, Comment 9.

■ There is no doubt that the relationship between Harry and his mother was close and confidential. Inter vivos gifts, asserted after the death of the donor, are regarded with suspicion. In considering the close and confidential relationship between mother and son, we must not lose sight of the fact that it is natural and normal for people, whether they be young or old, to make gifts to persons with whom they are close and in whom they repose confidence.

■ There is no evidence in the record establishing that Mrs. Hoffman did not intend to make a gift to Harry. The record shows that she was generous with all of her other children. There is no reason to believe that she would not be generous to Harry, who was ill, closest to her and had served her in her declining years. Brewer v. Allhands' Administrator, 251 Ky. 178, 64 S.W.2d 469. The evidence further discloses that to the end of her life Mrs. Hoffman, while uneducated, was a bright and sprightly woman who had not lost control of her faculties and senses. Harry was freely permitted to testify concerning his

1. To the extent that it held a gift must be proved when the owner of money deposits it to a joint bank account, the Hays case was overruled in Saylor v. Saylor, Ky., 389 S.W.2d 904 (decided April 30, 1965). In this case, however, since Mrs. Hoffman did not participate in the creation of the account, the transfer to Harry of money that originally was hers can be upheld only on the gift theory.

**648**

transactions with his mother. He continually stated that she repeatedly expressed the intention that he have the monies that she turned over to him, as his own. There is no evidence to contradict this. There is no evidence to contradict Harry's statement that his mother was fully advised of all of his activities with these funds. His explanation that his mother did not sign the account card because he was primarily interested in her having the money if something happened to him is credible. There is nothing unusual in a person to whom a gift is made wanting that gift to revert to the donor at his death, if the donor is the person who is closest to him and the most natural object of his bounty. The record does not show that Mrs. Hoffman ever claimed or attempted to exercise dominion over these funds after she turned them over to Harry.

In the last analysis we see no reason why the trial court should have placed so low a probative value on Harry's evidence. In doing so it ignored the fact that this evidence was uncontradicted both by testimony and circumstances and misapplied the rule in Hays v. Hays' Adm'r, supra. We are of the opinion that Harry proved that the funds represented by the investment account and certificates were received by him from his mother by an inter vivos gift and that, consequently, these funds became his property and, after his death, the property of his executor.

We recommend that the judgment herein be reversed and that this case be remanded to the Greenup Circuit Court, with directions to enter a judgment finding the $20,000 represented by the investment account and certificates to be the individual property of Harry Hoffman and that his executor is now entitled to said sum.

The opinion is approved by the court and the cause is reversed for entry of a judgment consistent with this opinion.